## LIABILITY UNDER A CASUALTY INSURANCE POLICY COVERING AN AUTOMOBILE.

Superior Court of Cincinnati.

CHARLES S. REINHART v. THE GREAT AMERICAN MUTUAL INDEMNITY COMPANY and GEORGE MOEHRING.
MORGAN A. REINHART, a minor, v. THE GREAT AMERICAN MUTUAL INDEMNITY COMPANY and GEORGE MOEHRING.

Decided, December 19, 1924.

*Validity of Acts Relating to Automobile Casualty Insurance—Liability of Insurer where the Insured has Exchanged Machines—Insurance Follows the Owner and not the Machine—Waiver of Causes of Forfeiture—Company Estopped from Denying Liability after Defending the Action Based on the Accident—Extent of Liability where Judgments for Parent and Injured Boy have been Obtained.*

1. Sections 9510-3 and 9510-4, Ohio General Code, providing that the plaintiff in a personal injury or wrongful death action who reduces his claim to judgment, shall be entitled to have the insurance money under a contract between a casualty company and the defendant applied to the satisfaction of his judgment, and that he may reach the same in an action against the insurance company and the defendant jointly, is a constitutional and reasonable regulation of the insurance business.

2. Where the insurance company denies liability to the defendant under its contract of casualty insurance, in an action brought by a judgment creditor against the insurance company and defendant jointly, to apply the insurance money to the satisfaction of his judgment, the judgment creditor may assert any facts or rights available to the defendant to establish the liability of the insurance company, including waiver and estoppel.

3. An insurance company waives causes of forfeiture of which it has knowledge by retaining the premiums received, electing to treat the policy as a valid and continuing obligation and in the case of liability insurance, assuming the entire charge of the defense of an action against the assured.

4. Where an insurance company, under the terms of its policy, excludes the assured from any control of litigation against him and compels an injured plaintiff to engage in litigation conducted by the insurance company to establish his rights, such company

is equitably estopped from denying liability to the assured and, under the statute, to the plaintiff in case of an adverse judgment.

5. The intention of automobile liability insurance covering claims for personal injury and death is to insure the individual, not the automobile, and the insurance follows the owner, not the machine.

6. An insurance company, which has issued a casualty policy covering an Overland automobile belonging to M, is liable for an accident wherein a Hupp machine was involved, which M had received in trade for his Overland, where after knowledge of the exchange the company continued the policy in force and subsequently took exclusive charge of the defense in the actions brought against M on account of the accident and which resulted in the judgments it is sought to satisfy in the present case.

7. Where liability under a policy of casualty insurance is limited to $5,000, on account of one accident resulting in injury or death to one person, and to $10,000 on account of injury or death to more than one person, the limitation to $5,000 is applicable where two judgments have been obtained, aggregating more than $5,000, one for injury to a boy and the other for expenses and loss of services suffered by his father.

*Edward S. Ballard*, for plaintiff.

*C. M. Workman* and *W. S. Symmes*, for defendant.

MARX, J.

The cases at bar were brought by the plaintiffs to compel the defendant insurance company to pay personal injury judgments in the amount of $6,000 and $742.95 respectively recovered by said plaintiffs against the defendant George Moehring who was insured, against automobile accident liability by the defendant casualty company.

The cases are brought under Sections 9510-3 and 9510-4 of the General Code, which provide that a judgment creditor may proceed against the defendant insurance company to reach and apply the insurance money to the satisfaction of his judgment. By agreement of the parties these cases were heard by the court without a jury upon the pleadings and the evidence. The plaintiffs filed amended petitions to which the defendant demurs, but agrees that in the event such demur-

rers are overruled, its answers to the original petitions shall stand as its answers to the amended petitions, and that the cases may be considered as submitted upon their merits for final adjudication.

Since the conclusions reached necessitate the overruling of the demurrers, the court has proceeded to consider the cases upon their merits.

The defendant relies upon the following three grounds to defeat liability to the plaintiffs under its policy of insurance:

*First.* That the sections of the Ohio statute authorizing the present actions are unconstitutional.

*Second.* That the accident on account of which plaintiffs recovered judgment was not a casualty covered by its contract of insurance within the meaning of such statutes.

*Third.* That the amount of the judgments exceeds the maximum liability of defendant under its policy of insurance.

In view of the far reaching consequences of these questions to a million and a quarter of automobile owners in Ohio and to more than one hundred casualty companies engaged in automobile liability insurance in this state, as well as to the thousands who are injured and killed annually by automobiles in this state, the court has examined each of these questions with the utmost care in order to arrive at a judgment which will be just to the automobile owner, the insurance company and the accident victim.

A brief review of the facts will illuminate the issues to be determined. On May 23, 1921, the Great American Mutual Indemnity Company, in consideration of a premium of $30.00 issued a policy of insurance to George Moehring, indemnifying him for one year against loss or expense resulting from legal liability by reason of the use of any automobile named in the policy, in an amount not exceeding $5,000.00, on account of one accident resulting in bodily injuries or death to one person, and $10,000 on account of an accident resulting in bodily injuries or death to more than one person.

The automobile described in the insurance policy was an Overland touring car. In August, 1921, the insured traded

his Overland automobile for a Hupmobile and transferred the license tag that he was using on the Overland to his Hupmobile. Thereafter, he used the Hupmobile and in the negligent operation of the Hupmobile seriously injured the plaintiff, Morgan A. Reinhart, a minor on September 4th, 1921. Two days later, on September 6th, 1921, Moehring notified his insurance company that he had traded the Overland Machine described in the policy for a Hupmobile and that while driving the Hupmobile, had injured Reinhart. Upon this statement, the defendant insurance company transferred the insurance policy for an additional premium of seven dollars to the Hupmobile. Subsequently, the defendant insurance company investigated the accident to Reinhart and endeavored to effect a settlement of the claim with the attorney for the plaintiffs.

No settlement having been effected, suits were brought by Morgan A. Reinhart as a minor and by Charles S. Reinhart as his father to recover damages. The defendant insurance company retained an attorney to defend these actions and this attorney filed answers in both cases. The insurance company took full charge of the defense of the cases and upon trial of the suit for personal injuries to the boy, actively defended the case. A verdict for $6,000 was returned against George Moehring, and the defendant insurance company then filed a motion for a new trial. The insurance company did not argue this motion and subsequently withdraw its attorneys from both cases. The motion for a new trial was overruled and judgment for $6,000 entered in favor of Morgan A. Reinhart and, no one responding when the case of Charles S. Reinhart was called, a default judgment was rendered in that action for $742.95. In these actions, the plaintiffs have joined the insurance company and Moehring in an effort to reach and apply the insurance money to the satisfaction of their judgments, as provided in Sections 9510-3 and 9510-4 of the General Code.

At the outset, the defendant insurance company challenges the constitutionality of these sections and we are thus brought to a consideration of their validity.

1. Are Sections 9510-3 and 9510-4 of the General Code constitutional ?

These sections were enacted in May of 1919 by an Act, entitled: "To regulate the payment of losses under contracts for casualty insurance." 108 Ohio Laws, part 1, page 385.

Their validity does not seem to have been challenged or determined in this state prior to the present actions. However, these sections simply apply the same rules to the payment of losses under automobile liability policies as Sections 9510-1 and 9510-2 of the General Code applied to the payment of losses under employer's liability insurance policies.

The constitutionality and validity of these sections was established by our Supreme Court in Verducci v. Casualty Co. of America, 96 O. S., 260. In that case the court holds that the business of insurance is one of public interest affecting all classes of people and property and is, therefore, properly the subject of legislative regulation. The court further holds that these sections become a part of every contract of indemnity as fully as if written therein, and its provisions must control regardless of the terms and conditions written into the policy by the contracting parties (page 265).

In our opinion, the reasoning of the Supreme Court in the Verducci case sufficiently sustains the power of the Legislature to regulate the business of writing automobile liability insurance in this state, and to provide that in cases where a judgment is obtained against the insured, the insurance company must discharge its contract by applying the insurance money to the satisfaction of the judgment.

The Court of Appeals of Franklin county in Steinbach v. Maryland Casualty Co., 15 Ohio Appellate Rep., 392, in holding that an injured person must first reduce his claim for judgment before availing himself of Sections 9510-3 for 9510-4 of the General Code, inferentially upholds such sections. The court says after quoting Sections 9510-1 and 9510-2:

"The purpose of the act of 1919 was to enlarge the statute so as to apply to all casualty insurance and give a remedy to the injured person against the insurance company."

The constitutionality of similar laws is upheld by the Supreme Court of Massachusetts in the well considered opinion of *Lorando* v. *Gethro*, 226 Mass., 181.

Without citing additional authorities, of which there are many, this court is of the opinion that Sections 9510-3 and 9510-4 General Gode, which provide that after judgment the liability of an insurance company becomes absolute and the policy can not be cancelled, and that payment of losses shall not depend upon the satisfaction by the assured of a judgment against him for such loss, and that the judgment creditor may reach and apply the insurance money to the satisfaction of the judgment, are valid and constitutional.

*Second.* Was the judgment for damages obtained by the plaintiffs a casualty covered by a contract of insurance between the defendants in those cases?

The insurance company contends that it was not for the sole reason that the injury was inflicted by a Hupmobile and the automobile described in the policy of insurance was an Overland.

The plaintiffs contend that the casualty was covered because the intention was to insure George Moehring against legal liability inflicted by an automobile used by him, and the defendant casualty company after knowledge that such automobile was a Hupmobile and not an Overland elected to continue his insurance in force, transfer it to the Hupmobile and take exclusive charge of the defense of the law suits against him thereby waiving any forfeiture based upon the injury having been inflicted by a different type of automobile than that described in the policy.

It will be observed that the statute provides that "if the *defendant*" was insured against loss or damage at the time when the right of action arose and not if "the automobile" of the defendant was insured. It is self evident that the intention of automobile liability insurance is to insure the individual and not to insure his automobile. The insurance does not follow the machine. It follows the owner. Throughout the policy, the assured is spoken of not as an Overland automobile

but as George Moehring.  While the value and type of automobile is important under *Section One* of the insurance policy which indemnifies him against loss or damage to his own automobile, the character and type of automobile is of insignificant importance under *Section Two,* which insures him against liability for damages inflicted by the operation of such automobile. The probabilities of the assured inflicting injury through the use of an Overland are no greater or no less than the probabilities of his inflicting injuries through the use of a Hupmobile.

Clause A. of Section Two clearly shows the intention expressed in language, which is to cover liability on account of, "bodily injuries and or death actually suffered or alleged to have been suffered by person or persons  *    *    *    as the result of an accident occurring while this policy is in force."

For these reasons it might be sufficient to hold that within the contemplation of the statutes and the evident intention of the policy "the defendant" was insured against loss or damage at the time the right of action arose regardless of whether the damage was inflicted by the Overland described in Schedule Six or the Hupmobile described in the rider of September 6, 1921.

Strong support for this conclusion is derived from *Boyle* v. *Manufacturers Liability Ins. Co.,* 96 New Jersey, 381; 115 Atlantic Reporter, 382, affirmed by the Court of Errors and Appeals in 117 Atlantic Reporter, 925.

In our case as in the New Jersey case, the license used on both vehicles was the same; the owner and operator was the same; the use and purpose of the vehicle was the same; the territory in which it was operated was the same and the risk of injury in so far as the assured, the company and the public, were concerned was the same.

However, it is not necessary to rest this decision exclusively upon this construction of the statute and the policy because it is clear that if trading the Overland for a Hupmobile furnished grounds for avoiding the policy, the Indemnity Company waived such possible causes of forfeiture and has also estopped itself from asserting the same and in so holding we are

not unmindful of the distinction between waiver and estoppel. This distinction is clearly set forth in *Webster* v. *State Mutual Fire Ins. Co.*, 81 Vermont, 75.

Two days after the accident to young Reinhart, the defendant Moehring went to the Schrim Insurance Agency who were authorized agents of the defendant to issue insurance and notified them that he had traded his Overland for a Hupmobile and had hit Reinhart with the Hupmobile. If the insurance company interpreted its policy as inapplicable to an injury caused by a different automobile than the one described in *Schedule Six*, it could and should have said so immediately. It was its duty to have so advised the assured if it disclaimed liability. It was in possession of all of the facts. Moreover, it had the insurance policy before it on this date, namely September 6, 1921, because the evidence is undisputed that on that date, the insurance company transferred the insurance to the Hupmobile and took an additional premium from the assured of seven dollars to cover the additional risk by reason of the property damage covered in *Section One* of the policy. At this time, the insurance company was faced with the necessity of an election. According to its present construction of its policy, it could have cancelled its insurance, declined to transfer the same, disclaimed liability and had nothing more to do with the case. Or, it could have waived any alleged forfeiture, continued the insurance and accepted the risk as one covered by the policy. Faced with the necessity for this election, the defendant company deliberately decided to retain the premium which it had received from the assured, to continue the policy in force, to transfer the insurance so as to cover the risk of the Hupmobile and to take complete charge of the investigation, negotiations for settlement and, subsequently the defense against the claim asserted by Reinhart. Its attorneys took entire charge of the case from that time on. Whether the considerations and motives which led the insurance company to consider this casualty as covered by its policy, were a desire to retain the business of George Moehring or to build up a good will in the community, or a belief that the detriment of

the risk assumed was not as great as the additional premiums received, are entirely immaterial. The material fact is that the defendant insurance company definitely elected to consider and treat the risk of this accident to Reinhart as a casualty covered by its policy in favor of Moehring.

Under the terms of the policy, George Moehring was powerless to do anything toward a settlement or a defense of the claim against him. The plaintiff was forced to engage in litigation in order to secure his rights. The attorneys of the insurance company filed answers in both the son's and the father's case against Moehring, appeared in open court at the trial and, after an adverse verdict in the son's case, filed a. motion for a new trial. At this point, the insurance company suddenly withdrew with the result that the motion for a new trial was overruled, no proceedings in error were taken and the judgment against Moehring became final to his prejudice and damage. Although the insurance company assumed the defense of the father's action and filed an answer, it did not. appear when the case was called for trial and a definite judgment resulted to the prejudice and damage of Moehring. Moehring was thus misled to his prejudice by having the control of the case taken away from him, the defense assumed by the insurance company and then being left defenseless at the last moment without his rights being adequately protected. The action of the insurance company also substantially prejudiced the plaintiff who was forced to engage in litigation which he might not have had to pursue except for the insurance company.

For these reasons, the court is of the opinion that the action of the insurance company was not only a waiver of any ground of forfeiture which it might have had but its actions following such waiver misled both Moehring and the plaintiffs to their mutual prejudice and damage and are sufficient to estop the insurance company from now disclaiming liability under its policy.

The language of our Supreme Court in *Verducci* v. *Casualty Company of America*, 95 O. S., 260, at page 267, reads as if it was written to fit the facts of the present case.

The defense of a law suit carries with it definite responsibilities and when the defendant insurance company assumed the defense of the law suit brought by Reinhart, it also assumed the responsibilities imposed by an adverse verdict and judgment. Parties are not permitted to conduct litigation in courts of justice in the manner that experiments are conducted in a laboratory in order to see if the result will be favorable or unfavorable. Innumerable decisions hold that by assuming to defend a policy holder without reservation in litigation of this character, an insurance company waives any defense which it may have as against the policy holder and some cases hold that the plaintiff, in such event may acquire even greater rights against the insurance company which actually defends than the policy holder may have had in the first instance. The policy holder is not permitted to connive with the defendant in an action of this character to defeat the rights of the plaintiff and courts scrutinize with care defenses which the company asserts based upon an alleged breach by the policy holder. *Roth* v. *Nat. Auto. Mutual Co.*, 202 App. Div., 167, 195 N. Y. Supp., 865.

A striking illustration of the responsibility assumed by defending a law suit may be found in *Boehmke* v. *The Northern Ohio Traction Company*, 88 O. S. 156,

Another case directly in point is *Hewitt* v. *Dry Cleaning Co.*, 21 N. P. (N.S.), 537.

The extent to which the courts will go in enforcing the rights of an employee under Sections 9510-1 and 9510-2 General Code, which parallel the sections under consideration here, may be found in *McGhee* v. *Casualty Co. of America*, 15 Ohio App., 457.

The general rule is stated by Berry on Automobiles, 4th edition (1924), at page 1543, article 1815, as follows:

"Under a policy of insurance which excludes the assured from participation in the defense or settlement of any claim against him, the insurer can not, after settling some of the claims growing out of an accident and undertaking the defense of a suit on other claims, withdraw from the defense and cast the burden

thereof on the assured on the theory that it had mistaken the nature of its obligation under the policy.''

The reason for this rule which is supported by an almost unbroken current of authority is based upon waiver and estoppel and the principle underlying .it is set forth with clarity by the Court· of Appeals, in *Rothschild* v. *Title Guarantee & Trust Company*, 204 N. Y., 458.

Some of the cases which support the rule are suits between a policy holder and an insurance company and some of the cases are suits by the injured plaintiff as a judgment creditor against the insurance company directly. However, it is immaterial whether the action against the company is brought by the policy holder to enforce his obligation or by the injured party to enforce the same obligation because, under the statute, the injured party may recover against the insurance company directly in any case where the policy holder is entitled to the insurance money in discharge of the policy obligation.

Among the cases supporting the rule adopted in this opinion is *Patterson* v. *Aden,* 110 Minn.. 308.

This decision has been followed in *Standard Printing Company* v. *Fidelity & Deposit Company of Maryland,* 138 Minn., 304, *Mahr* v. *Maryland Casualty Company,* 132 Minn., 337, *Powers* v. *Wilson,* 139 Minn., 309, and *Tighe* v. *Maryland Casualty Co.,* 218 Mass., 463.

*Fullerton* v. *U. S. Casualty Company,* 184 Iowa, 219, 6 American Law Reports, Annotated, 367, is a carefully considered decision directly in point. In that case Fullerton was insured by the defendant company. Fullerton's automobile injured a Mrs. Jacobson. The insurance company undertook the defense of the action brought by her and later withdrew from the case on the ground that the action was not one against which the policy afforded any insurance indemnity. The court held, the insurance company having undertaken to defend against the suit of Mrs. Jacobson, could not ''rightfully abandon it for no better reason than its belated conviction that the policy did not impose upon it the duty to assume such defense.''

The court further said, in holding the insurance company liable: "the insurer will not be permitted then to change front, abandon a defense it has undertaken, and escape liability on the plea that it has mistaken the nature of its obligation." *Bradley* v. *Standard Life & Accident Ins. Co.*, 93 N. Y., Supp., 245.

The waiver by the defendant insurance company in the present case does not stand upon any different footing than waivers of other clauses in insurance policies concerning the time within which notice must be given, the unconditional ownership of the automobile, etc. No question has ever been made that the company by undertaking the defense of an action waives the failure of the assured to give prompt notice nor by retaining a premium after knowledge of a mortgage waives the provision for forfeiture on account of incumbrances. *Farrell* v. *Merchants Mut. Automobile Liability Ins. Co.*, 203 App. Div., 118; 196 N. Y. Supp., 384.

*Miller* v. *Union Indemnity Co.*, 204 N. Y., Supp., 730, decided May 21, 1924; *Vulcan Insurance Company* v. *Johnson*, 74 Indiana, App., 62; 128 N. E., 664; *Compton Heights Laundry Co.* v. *General Accident, Fire & Life Assurance Corporation*, 195 Mo. App., 313; *Lee* v. *The Casualty Company of America*, 90 Conn., 202; *Gillard* v. *Manufacturers Insurance Co.*, 92 N. J., 215, affirmed 93 N. J. 141 (S. C.).

The most recent case upon this question is *London & Lancashire Indemnity Co.* v. *Cosgriff* (Court of Appeals of Maryland), 125 Atlantic, 529, in which the court held in the third syllabus:

"Requirements of an automobile indemnity policy of notice to insurer upon happening of an accident was waived, where insurer took charge of trial between injured party and insured, and no objection was made by insurer to insured's failure to notify it of accident."

In a number of cases which arose under Employer's Liability Policies containing a provision that the Insurance Company should not be liable in case of an accident caused by an employer's violation of law, it was held that if the Insurance Company undertook the defense of a claim brought by an

employee injured by an employer's violation of law, it was estopped to deny liability under its policy. In this connection See *Tozer* v. *Ocean Accident & Guarantee Corporation*, 94 Minn., 478; *Glens Falls Portland Cement Co.* v. *Traveler's Insurance Company*, 162 N. Y., 399; *Rosenblume* v. *Casualty Co.*, 137 N. Y. Supp., 1064; *Royle Mining Co.* v. *Fidelity & Casualty Co.*, 126 Mo. Appeals, 104; *Canning Company* v. *Guarantee & Accident Company*, 154 Mo. Appeals, 327; *Empire State Surety Co.* v. *Pacific Nat. Lumber Co.*, 200 Fed., 224 (C. C. of App., 9th Circuit).

A similar conclusion was reached by the U. S. Court of Appeals in *Employers' Liability Assurance Corporation of London, England,* v. *Chicago & Big Muddy Coal & Coke Co.*, 141 Fed., 962, 73 C. C. A., 278.

The case at bar is not like the case of *Ohio Moulding Mfg. Co.* v. *Standard Life & Accident Ins. Co.*, 24 C. C. N. S.), 603, or *Morrison* v. *Royal Indemnity Co.*, 167 N. Y. Supp., 732. In these cases the companies defended without any knowledge of the facts which relieved them from liability and promptly withdrew from the cases upon learning such facts. It is true that in the present case, an effort was made to prove that the defendant Insurance Company did not know that the injury to plaintiff was caused by a Hupmobile until after the trial of the first case and withdrew promptly upon learning this fact. However, the evidence is to the contrary and this court finds that Moehring told Mr. Schrim two days after the accident that he had hit Reinhart with the Hupmobile. The defendant is bound to know what its agents knew and independently of its agents had in its own office at Mansfield, sufficient data to apprise it of all of the facts. Hence, in the instant case, the Insurance Company knew all of the facts as soon as the accident was reported and with full and complete knowledge of these facts, elected to consider the accident as a casualty covered by the policy of insurance.

The case at bar is also clearly distinguishable from an unreported opinion of the Court of Appeals of the Seventh

District in *Strachen* v. *Commercial Rapid Transit Co.,* and *The Hartford Accident & Indemnity Company,* a copy of which has been furnished the court by counsel for the defendant. That case arose *prior* to the adoption of Sections 9510-3 and 9510-4 of the General Code. Nevertheless, it was sought to apply such statutes so as to hold the defendant Insurance Company. The court properly said that the contract having been made prior to the adoption of the statutes, that the statutes were not intended to be applicable by the language of the statute and could not be construed as applicable without impairing the obligation of a pre-existing insurance contract.

It is sufficient to say that in our case, the insurance policy upon which this accident was based, was written after the adoption of Sections 9510-3 and 9510-4 of the General Code and is subject thereto.

The present case must also be distinguished from cases like *Lockwood* v. *The Aetna Life Ins. Co.,* 8 Ohio App., 444. Motion to certify overruled, 62 Bull., 527, 15 O. L. R., 485, in which the Insurance Company defended under an express agreement and reservation that such defense should be without prejudice to their rights. There was no reservation of rights in this case and even in cases where an attempted reservation is made but not agreed to by the assured, the companies have been held to waive any cause of forfeiture by continuing a defense. See *Utterback-Gleason Co.* v. *Standard Accident Ins. Co.,* 193 App. Div. Supreme Court, New York, 646, affirmed without opinion, 233 N. Y., 549, 135 N. E., 913.

We are convinced from an exhaustive examination of the cases that there is no well reasoned authority which holds that an Insurance Company does not waive causes of forfeiture of which it has knowledge by retaining the premiums received, and electing to treat the policy as a valid and continuing obligation and, in the case of liability insurance, assuming entire charge of the defense of an action against the assured.

Where the insurance company, under the terms of its policy, excludes the assured from any control of the litigation against him, as in the case at bar, and compels the injured to engage in litigation with the Insurance Company to establish his rights, the Insurance Company is equitably estopped from denying liability to the assured and, under the statute, to the plaintiff in case of an adverse judgment.

For these reasons, we find that the defendant Insurance Company is liable to Moehring on its policy and that the plaintiffs by favor of the Ohio statutes may reach and apply the insurance money to the satisfaction of their judgments.

The amount of the liability of the insurance company under its policy is the only question which remains to be determined.

Third: What is the extent of the liability of the defendant under its policy?

The policy issued by the defendant company provides:

"The company's liability for loss on account of an accident resulting in bodily injuries and for death to one person is limited to Five Thousand no/100 Dollars ($5,000) and, subject to the same limits for each person, the Company's total liability for loss on account of any one accident resulting in bodily injuries and for death to more than one person is limited to Ten Thousand no/100 Dollars ($10,000). To pay, irrespective of the limits of liability specified in statement 5 of the Warranties, the expense incurred by the Assured for such immediate surgical and for medical relief as is imperative at the time of any accident on account of which claim could be made under this clause."

"In conjunction only with coverages granted under clauses 'A' and or 'B' of this section, the Company does hereby agree to pay all costs taxed against the assured in any legal proceeding defended by the Company in accordance with the foregoing agreement; and to pay interest accruing upon such portion of any judgment rendered in connection therewith as shall not be in excess of the limits of the Company's liability as specified in Clause 'A' of this section."

The amount of the judgments recovered by plaintiffs exceeds the limits of liability set forth in the above policy. The judgment in the case of the injured boy is Six Thousand ($6,

000) Dollars and the judgment in favor of his father for loss of services and expenses arising from the boy's injuries is Seven Hundred Forty-two and 95/100 ($742.95) Dollars. It is suggested by the plaintiff that these judgments represent injuries to more than one person and, therefore, fall within the Ten Thousand Dollar limit. The court cannot agree with this contention. The limits for bodily injury to one person is $5,000, and costs. In our opinion, the word *"bodily injuries"* describes the character of injuries contemplated by this limitation and the legal division of the damages arising from the fact that the injured person was a boy, does not constitute "bodily injury" to more than one person but merely legal damage to more than one person arising out of one bodily injury. Therefore, the limitation of $5,000 is applicable and not the limitation of $10,000.

There is excellent authority for this conclusion. In *Klein v. The Employers' Liability Assurance Corporation*, 19 N. P. (N. S.), 426, a married woman recovered a judgment for $5,000 for personal injuries and her husband recovered a judgment for $4,000 for loss of services, medical expenses, etc., occasioned to him by her injury. The policy contained a similar provision to the one in the instant case. The Common Pleas Court of this county in an opinion by that most able jurist, Judge Max B. May, held that the limitation of $5,000 for an injury to one person was applicable.

The court also held that the company was required to pay the costs of both cases.

The same conclusion was reached in *Williams* v. *Nelson*, 228 Mass., 191.

In accordance with this construction, the court finds that the plaintiffs are only entitled to recover five thousand dollars against the defendant insurance company and the legal costs taxed against the assured in the legal proceedings defended by the insurance company.

Judgment may be entered finding the issues in favor of the plaintiffs in accordance with this opinion.