## McGhee, Attorney General, v. Casualty Co. of America.

*Insurance—Foreign corporations—Distribution of deposit with state treasurer—Section 9510, General Code—Claim of non-resident creditor disallowed, when—Employe subrogated to employer's rights, when—Section 9510-1, General Code—Action by employe not barred, when—Default judgment by third party against insurer binding, when—Allowance of attorneys' fees from deposit—Ohio contract not created by contractor's residence and signing in Ohio, when—Priority of claims against deposit—State taxes subordinate to policyholders' claims.*

1 In the distribution of the deposit made by a foreign insurance or guarantee company with the state treasurer, under Section 9510, General Code, the claim of a non-resident creditor, which arises out of a contract of insurance made outside of the state of Ohio, should be disallowed. The fact that the claimant transacted a part of its own business in Ohio, and incurred liabilities under the Ohio workmen's compensation law, for which the guarantee company became liable under its insurance contract, does not change the non-resident status of the assured.

2. An employe, after obtaining judgment against an insured employer, whose insurance contract was made in Ohio and covered such risk, may be subrogated under Section 9510-1, General Code, by action against the insurance company, and would not be barred therefrom (a) By a compromise and release made by the insured with the company after the claimant's cause of action arose, or (b) By a special limitation in the policy of insurance applying to the insured and limiting his right of action to 90 days after judgment against such insured.

3. Where an insured brings action against an insurance company to recover upon a liability within the terms of the insurance policy, and service of process is duly had upon the insurance company and the action proceeds regularly to judgment against such insurance company, such judgment will not be invalidated by the fact that subsequent to the service

of process the courts of the state of New York, where the insurance company was domiciled, appointed a liquidator who took full charge of the affairs and property of the company other than the insurance deposit involved in this action.

4. Where an action is brought by a third party against the insured for a liability covered by the policy of insurance, and the insurance company is duly notified of the action, and makes no defense, a default judgment rendered in such action is binding upon the insurance company in the absence of fraud or collusion.

5. Attorneys employed by the insurance company to defend actions against the company or its insured are not entitled to allowances therefor out of the Ohio fund as against policyholders.

6. Claimants whose principal claims have been allowed are entitled to include therein expenses for attorney's fees incurred by such claimants in defense of claims under the policies after the insurance company makes default.

7. A construction contract and bond for work to be performed outside of Ohio, executed by the sureties outside of Ohio, and accepted and delivered outside of Ohio, is not made an Ohio contract by the fact that the contractor was a resident of Ohio and signed the contract and bond in his own behalf in Ohio.

8. Taxes due the state under Section 5433, General Code, are subordinate to the claims of policy-holders as against the deposit fund in the hands of the state treasurer, but the same may be set off against any amount due the insurance company or its liquidator.

(Decided November 12, 1921.)

ERROR: Court of Appeals for Franklin county.

*Mr. John G. Price,* attorney general, and *Mr. Ray Martin,* for State of Ohio.

*Mr. Frank Taggart* and *Messrs. Vorys, Sater, Seymour & Pease,* for Jesse S. Phillips, Superintendent of Insurance, N. Y.

*Messrs. Snyder, Henry, Thomsen, Ford & Seagrave,* for The Graner Contracting Company.

*Messrs. Toupet, Beil & Conley,* for The U. S. Gypsum Company, the Williamson Company, The Eberhard Manufacturing Company and The Cleveland Welding & Manufacturing Company.

*Messrs. Bentley & Biggs* and *Mr. John W. Leahy,* for McDonald and Leahy.

*Messrs. Turner, Calland & Summers,* for Frank M. Wise.

*Messrs. Niman, Grossman, Buss & Holliday,* for The Northern Ohio Paving & Construction Company.

*Messrs. Ford, Snyder & Tilden, pro se.*

*Messrs. Hine, Kennedy, Manchester, Conroy & Ford, pro se.*

*Mr. G. E. Bibbee* and *Mr. Joseph Blake,* for James DeVault.

ALLREAD, J. The question as to the jurisdiction of the courts of Ohio to administer the fund deposited with the superintendent of insurance, and of the rights of Ohio policy-holders therein, as distinguished from the policy-holders of foreign states, was decided by this court in *State, ex rel. Turner, Atty. Genl.,* v. *Union Casualty Ins. Co. of Philadelphia,* 8 Ohio App., 285. This case was referred to Hon. Francis H. Game, as special master commissioner, to hear and determine the issues as to the distribution of the fund and to make report.

Upon the filing of the report certain exceptions thereto were presented.

The question now arises upon confirmation of the report. There are many important questions presented, each of which amounts to a separate case. The master, in his report, states the facts upon which the respective claims rest, and his conclusions of law.

The most important questions are those in which exceptions to the report of the special master commissioner are presented. We have carefully considered the record, the briefs, and argument of counsel, and announce herewith our conclusions.

THE GRANER CONTRACTING COMPANY, THE TOUPET, BEIL & CONLEY, INC., AND THE U. S. GYPSUM COMPANY CLAIMS.

These claimants were non-residents of Ohio and the contracts of insurance were made outside of Ohio. The claimants, however, were carrying on business in Ohio and were subject to the provisions of the Ohio workmen's compensation law. In the course of their business in Ohio they incurred liabilities under the Ohio workmen's compensation law, part of which was discharged by the Casualty Company. The remainder has either been paid by the respective claimants or a liability for the unpaid portions still exists. It is urged that the liability of the claimants under the Ohio workmen's compensation act amounts to the transaction of business by The Casualty Company in Ohio, which fact would hold the Casualty Company to the Ohio law and give its policy-holders the benefit of the Ohio deposit. Counsel for the claimants rely upon the decision of this court in the case of *Hogan, Atty. Gen.,* v. *Empire State Ins. Co.,* 8 Ohio App., 172. The *Empire State Insurance Company case* was controlled by the act of congress which gave the subcontractors the benefit of the policy. Such subcontractors were constructive policy-holders, and being citizens of Ohio, and their claims having originated from business in Ohio, it was held that such constructive policy-holders were entitled to the benefit of the deposit. We find no

parallel facts in the case under consideration.   The policies here were issued. outside of Ohio to non-residents, and such non-residents are claiming the benefit thereof.   There are no facts stated either in the answer of these claimants, the evidence, or the special finding of facts, which would permit these claimants to invoke the benefit of the Ohio statutes providing for the deposit and distribution of the Ohio fund.   These claims were properly rejected by the special master commissioner.

## THE McDONALD AND LEAHY CLAIM.

William Kramer, a citizen of Ohio, was the assured in a policy issued by the Casualty Company in Ohio, insuring him against employer's liability.   McDonald was an employe of Kramer, and, within the life of the policy, was injured in the course of his employment.

January 6, 1912, McDonald, by his next friend, brought suit against Kramer in the court of common pleas of Cuyahoga county to recover damages for such injuries.

January 24, 1913, the action was dismissed without prejudice by the plaintiff.

February 14, 1913, for a consideration of $1,600 paid to Kramer by the Casualty Company, Kramer assigned and surrendered his interest in the policy of insurance to the Casualty Company.

February 20, 1913, McDonald commenced another action against Kramer in the court of common pleas of Cuyahoga county to recover damages for the injuries aforesaid.

August 13, 1915, McDonald recovered a judgment in the action against Kramer in the sum of $5,000 and costs.   Execution was issued on that judgment on December 23, 1915, and was returned unsatisfied

462          Ohio Appellate Reports.

McGhee, Atty. Genl., *v.* Casualty Co.          [15 Ohio

on January 10, 1916. McDonald thereupon assigned to John W. Leahy one-half interest in the judgment.

October 19, 1916, McDonald and Leahy commenced an action against William Kramer and the Casualty Company in the common pleas court of Cuyahoga county, seeking to be subrogated to the rights of William Kramer in the said policy of insurance and to recover of the Casualty Company the amount of the judgment theretofore obtained by McDonald against Kramer. The Casualty Company filed its answer, setting forth among other defenses:

1. That the policy of insurance had been surrendered by the assured and canceled, and

2. That the policy contained a provision that no action could be maintained against the Casualty Company unless commenced within 90 days from the date of the final judgment against the assured. That action is still pending.

McDonald and Leahy have filed a cross-petition and an amendment thereto in this court, seeking to establish an equity in the fund in the hands of the insurance commissioner. The superintendent of insurance of the state of Ohio and the New York liquidator of the Casualty Company filed an answer setting up, among other defenses, the alleged cancellation of the policy and the condition of the policy requiring actions to be brought within 90 days after final judgment on the claim against the assured. The questions presented are:

First, as to the jurisdiction of this court to hear and determine the controversy;

Second, as to the alleged cancellation of the policy;

Third, as to the failure of the claimant to bring suit within 90 days after judgment against the assured.

Whether the common pleas court of Cuyahoga county in the pending action might have rendered a judgment establishing a legal liability against the company to McDonald is not important because no such judgment was rendered. We are of opinion that this court has jurisdiction to hear all competent evidence and determine the right of the claimants to participation in the funds deposited with the superintendent of insurance of Ohio. We are also of opinion that the settlement by the Casualty Company with Kramer, and the alleged cancellation of the policy, would not affect the existing cause of action in favor of McDonald.

The important and difficult question arises in connection with Section 9510-1, General Code, over the clause in the policy limiting the time of bringing an action against the company to 90 days after the final judgment against the assured. The condition in the policy is as follows:

"No action shall lie against the company to recover for any loss as described in this policy, unless brought within ninety days from the date of entry of the final judgment against the assured, after a trial of the issues on the merits, in a suit duly instituted within the period limited by the statute of limitations, awarding damages on account of a casualty covered thereby, and then only provided that such action against the company, be brought by the assured personally, for damages sustained by the assured in paying and satisfying such final judgment. This clause shall not in any way limit, restrain or abridge the company's defense to any such action."

The statute referred to is as follows:

"Sec. 9510-1. An employee, who has heretofore recovered or shall hereafter recover against his em-

464 OHIO APPELLATE REPORTS.

McGhee, Atty. Genl., v. Casualty Co. [15 Ohio

ployer for injuries sustained while in the employ of his employer, and because of negligence of the employer, or negligence for which he or it is liable, shall be subrogated to all the rights of the employer under any contract or policy of insurance against loss or damage resulting to said employer from injury or death of an employee while in the service of such employer whether said person, copartnership or corporation contracting or issuing such policy of insurance has been made a party to the action for damages sustained or not.''

Section 9510-1 was under consideration in the case of *Verducci* v. *Casualty Co. of America,* 96 Ohio St., 260, and it was held that provisions in the policy tending to defeat the right of subrogation are invalid. The subrogation statute was one of many affording relief to workmen injured in industrial employment. Contracts of insurance are required to conform to the public policy of the statute, and where a provision in the insurance policy conflicts with the statute the provision in the policy must yield. Again, an insurance policy will, if possible, be construed so as to be in harmony with the statute. It is well settled in Ohio that conditions for the benefit of the insurance company will be strictly construed. *Mumaw* v. *Western & Southern Life Ins. Co.,* 97 Ohio St., 1; *Ensel* v. *Lumber Ins. Co. of N. Y.,* 88 Ohio St., 269; and *Employers' Liability Ins. Corp.* v. *Roehm,* 99 Ohio St., 343.

The 90-day provision was evidently intended to apply to the assured. It required not only the suit to be brought within 90 days, but also payment of the claim by the assured. It would be impossible of application to a subrogated employe. We think a reasonable construction would be that the condi-

tion applies only to an action by the assured against the company, and would not apply to a subrogated employer who claims under the statute. (*Union Central Life Ins. Co.* v. *Skipper,* 115 Fed. Rep., 69.) Besides, the limitation of 90 days to bring an action, if applied to an employe, who was not a party to the execution of the policy and who ordinarily would have no access to the policy, would be unreasonable, and in most cases amount to a virtual defeat of the policy, of the statute, and to a denial of justice. (*Lamb* v. *Powder River Live Stock Co.,* 132 Fed. Rep., 434.) In either horn of the dilemma we think the 90-day provision would not apply to the claimant.

It is urged that the subrogation statute invests the employe with the right of the policy-holder burdened with the limitation as to the time of bringing the action.

Equitable subrogation, however, does not rest wholly upon the contract, but depends upon the relation of the parties growing out of the facts which give rise to the right of subrogation. A surety or other party entitled thereto may employ the doctrine of subrogation in cases where the party in whom the right originally rested is barred by a release or cancellation or by the statute of limitations. (*Smith* v. *Folsom et al., Receivers,* 80 Ohio St., 218, and *Neff* v. *Elder,* 84 Ark., 277.) The subrogation statute was designed to employ the equitable doctrine of subrogation as far as applicable. The employe, upon recovering judgment, becomes entitled to enforce his claim against the insurance company and is not necessarily deprived of that right by limitations against the policy-holder as to the time of bringing the action. The right of the policy-holder,

to which the employe succeeds, is his primary right to enforce his claim against the insurance company for compensation.

Exception to the master's report upon this claim is sustained and the claim allowed.

### THE EVERHARD MANUFACTURING COMPANY, THE CLEVELAND WELDING & MANUFACTURING COMPANY AND THE WILLIAMSON COMPANY CLAIMS.

The exceptions in these cases involve the inclusion in the amount allowed to them of attorneys' fees for defending suits against the assured after the insurer failed to make defense.

The insurance policy includes a covenant to pay the assured "All expenses incurred by the company for investigation, negotiation, settlement or defence."

This stipulation is broad enough to support the allowance for attorneys' fees as made by the master.

### THE NORTHERN OHIO PAVING & CONSTRUCTION COMPANY CLAIM.

This claimant held a policy of insurance issued by the Casualty Company insuring the claimant against loss for accidental injuries to its employes and others.  Its answer and cross-petition in this court set up the facts constituting its claim and averred that an action was then pending in the court of common pleas of Cuyahoga county against the Casualty Company.  A supplemental cross-petition shows that a petition in the common pleas court of Cuyahoga county was filed by claimant on February 16, 1916,

and avers that a judgment was recovered against
the claimant by the city of Cleveland for $2,060.62,
and costs of suit, and that this judgment was founded
upon a liability against the claimant within the terms
of the policy. This claimant also averred that it
paid as attorneys' fees $200 in the defense of said
action. It further averred that service of summons
was had upon the Casualty Company in the action
so brought by claimant, and that a trial was had in
court upon the merits and a judgment recovered
against the Casualty Company by the claimant on
February 6, 1919, for the amount of such claim with
interest. The question is as to the evidential value
of the judgment in favor of claimant against the
Casualty Company in the Cuyahoga court of com-
mon pleas. It will be noted that under the terms
of the policy the claimant was required to bring an
action against the Casualty Company within 90 days
after final judgment against such claimant. In
bringing and prosecuting the action the claimant
was, therefore, resorting to the method provided
by the policy for the establishment of a liability
against the Casualty Company. The court of com-
mon pleas in the action by the claimant against the
Casualty Company obtained jurisdiction of all nec-
essary parties. The subsequent appointment of the
New York liquidator did not automatically abate
the action then pending in the court of common pleas
of Cuyahoga county, nor oust that court of jurisdic-
tion over the subject-matter. It does not appear
that the Casualty Company has been dissolved, but
even if it had that would not necessarily, under the
laws of this state, abate a pending action. Besides,
under the law of this state, the judgment against
the Casualty Company after its assets had gone into

468 OHIO APPELLATE REPORTS.

McGhee, Atty. Genl., v. Casualty Co. [15 Ohio

the hands of the New York liquidator, or the Ohio superintendent of insurance, would at most be void-able. It was held in the early case of *John Swasey & Co.* v. *M. T. Antram & Co.*, 24 Ohio St., 87, that the death of a defendant during the pendency of an action did not render the judgment absolutely void. So here the judgment against the Casualty Company was merely voidable at the instance of the representative of the Casualty Company. The answer of the claimant in this court, showing the pendency of the action upon the policy in Cuyahoga county, was constructive if not actual notice of the fact to the New York liquidator. The failure to attempt to open up or impeach the judgment, either in the court of common pleas of Cuyahoga county or in the present action, would allow the judgment against the Casualty Company to stand as an adjudication of a legal liability in favor of the claimant against the Casualty Company upon the policy of insurance. It is true that the court of common pleas of Cuyahoga county had no jurisdiction over the funds deposited with the superintendent of insurance, or of the distribution thereof. The court of common pleas could only determine the legal liability of the Casualty Company to the claimant. The other facts necessary to establish the claimant's right to share in the fund are subject to determination here. Counsel for the New York liquidator cite *Danforth* v. *National Chemical Co.*, 68 Minn., 308, and *Buffum* v. *Hale*, 71 Minn., 190, 73 N. W. Rep., 856, where independent actions were brought after the insurance company had been placed in the hands of trustees. Here the action to establish the liability of the insurance company was brought before any legal action had been brought to place the affairs of the Casualty Com-

pany in the hands of trustees. The case of *Smith, Ins. Commissioner,* v. *National Credit Ins. Co.,* 78 Minn., 214, 80 N. W. Rep., 966, involved primarily a question of pleading. The case was pending in Minnesota and involved the distribution of a bond in the hands of the insurance commission of that state. A policy-holder who had secured a judgment against the insurance company in a foreign state asked leave to intervene in the Minnesota court, and to set up its judgment as conclusive of its right to share in the funds. The court held it should set up the original cause of action, but not the judgment. While it was held that the foreign judgment was improper as a matter of pleading, yet it was stated in the opinion at page 217: "It [the judgment] would, if alleged in the complaint and proven on the trial, simply be evidence of a debt owing from the debtor to the creditor from and after its rendition."

The cross-petition of the claimant in the case at bar sets out the original cause of action and all facts necessary to show the claimant's right to participate in the fund.

The judgment against the Casualty Company, in connection with the other facts found by the special master commissioner, was sufficient to sustain the claim represented by the judgment including the allowance made for attorneys' fees. The report of the master upon this claim is therefore sustained.

## The Frank M. Wise Claim.

Wise, a citizen of Ohio, contracted with The Pennsylvania Railway Company for certain construction work at West Jefferson, Ohio. He took an employers' liability policy from the Casualty Company.

470     OHIO APPELLATE REPORTS.

McGhee, Atty. Genl., *v.* Casualty Co.     [15 Ohio

During the progress of the work, and within the life of the policy, Jester was killed and Groomes was injured. Both Jester and Groomes were employes of Wise and engaged in the construction work. Suits were brought by the administrator of Jester and Groomes against The Pennsylvania Railway Company to recover damages. Separate suits were also brought against Wise. The Jester case against the railway company was tried, and resulted in a verdict and judgment against the company for $6,-000, and costs. The Groomes case was settled by the payment by the railway company of $1,400 and costs. The cases brought by Jester's administrator and by Groomes against Wise were dismissed. The Pennsylvania Railway Company after payment of the judgment and settlement brought suit against Wise and the Casualty Company to recover the amount thereof.

The Casualty Company was duly notified by Wise of the pendency of the suits brought by the administrator of Jester and by Groomes against the railway company and himself. The Casualty Company was also duly notified by Wise of the suit brought by the railway company against him and the Casualty Company. Upon motion of the Casualty Company the service upon it was quashed. An amended petition was thereupon filed by the railway company against Wise, upon which default judgment was rendered against Wise. The master finds that Wise relied upon the promise and representation of the Casualty Company that it would defend the action of the railway company against him and had no notice or knowledge that the Casualty Company had not assumed the defense of the action until after the rendition of the judgment. Wise thereupon paid

the judgment, and filed an answer and cross-petition in this case within the time limited by the policy, after the judgment against him by the Pennsylvania Railway Company. This question is a very important one and not free from difficulty. The case has been fully and ably argued by respective counsel. The question, briefly stated, is whether the judgment recovered by the railway company against Wise is within the terms of the policy issued to Wise by the Casualty Company. The policy insured Wise "against loss and expense resulting from claims made upon the assured for damages on account of bodily injuries, including death, suffered through an accident occurring during the term of this policy, of any employee or employes of the said assured on account of the prosecution of the work herein stated and while at the places herein mentioned."

The policy specified the particular work in which the assured engaged, under its contract with the railway company. The amended petition of the railway company against Wise contains the following averments:

"And the plaintiff avers that the falling and giving away of the trestle and the resulting injury of one Albert Groomes, a miner, and the injury and death of one Edward Jester, hereinafter mentioned, was directly caused by the failure of said defendant, Wise, to exercise due care for his safety and protection, as aforesaid, and discharge his primary duty in that respect, and as provided by the terms of said contract.

"Plaintiff further avers the falling, collapse and giving away of said trestle was the direct and sole cause of the death of said Edward Jester, and the serious and permanent injury of the said Albert

472     Ohio Appellate Reports.

McGhee, Atty. Genl., *v.* Casualty Co.     [15 Ohio

Groomes, and that as between the plaintiff and defendant Wise, the giving away and falling of said trestle and resulting death of Edward Jester, and the serious and permanent injury of said Albert Groomes, were directly due to causes not attributable to the negligence of this plaintiff but to the negligence and want of care of said defendant, and his failure to take, use, provide and make proper, necessary and sufficient precautions, safeguards and protections as aforesaid, and as provided in said contract, against the occurrence or happening of accidents or injuries to persons in his employ during the progress of the work which he had so contracted to do and perform.''

It is claimed:

(1) That the policy was only intended to indemnify Wise against claims by injured employes, directly against him.

(2) That the proper judgment of Jester's administrator and the settled claims of Groomes were upon a liability of the railway company and that the judgment of the railway company against Wise rests upon a contract liability rather than an employer's liability.

In respect to the first claim we are of opinion that under the language of the indemnity contract, properly construed, the liability of the Casualty Company is not limited to a direct claim of the railway company, if founded upon the primary negligence of Wise as an employer.

As to the second contention, the amended petition of the railway company against Wise charges that the death of Jester and the injury to Groomes were due solely to the negligence of Wise. The fact, that, under the contract between the railway company

and Wise, Wise assumed an obligation to discharge
these liabilities, would not necessarily bar Wise of
a remedy under the policy. If the facts stated in
the amended petition of the railway company against
Wise were untrue, or insufficient, it was the duty
of the Casualty Company to defend. The Casualty
Company having defaulted in making a defense is
estopped to deny the validity of the judgment
against Wise, or to claim that a defense could have
been interposed or that the judgment is erroneous.
We are therefore of opinion that this claim was
properly allowed by the master.

### THE FORD, SNYDER, TILDEN, KENNEDY, MANCHESTER AND CONROY CLAIMS.

These are claims for legal services rendered on
behalf of the Casualty Company in defense of claims
made against policy-holders. The claims of Ford,
Snyder & Tilden against the Ohio deposit were dis-
allowed, and, we think, properly. The attorneys
were employed by the Casualty Company in pursu-
ance to its contract obligation to defend its policy-
holders. The attorneys are general creditors of the
Casualty Company, but are not entitled to the status
of a policy-holder under the Ohio statute. This
court so decided upon a similar claim made in the
*Empire Surety Company case, supra.*

### THE JAMES DEVAULT CLAIM.

James DeVault was engaged in the construction
of United States government buildings. He gave
construction bonds to the United States government
for the construction of government buildings at

474 OHIO APPELLATE REPORTS.

McGhee, Atty. Genl., v. Casualty Co. [15 Ohio

Huntington, West Virginia, and Monongahela, Pennsylvania, with the Union Casualty Company and the International Fidelity Company as sureties. James DeVault was a resident of Ohio, and executed the bonds in Ohio, but both sureties upon the bonds signed in Washington, D. C., and the bonds were delivered in Washington, D. C.

The construction contracts were executed and delivered in Washington, D. C. There is some controversy as to whether the Huntington contract was executed by DeVault in Ohio, but we have accepted the additional testimony offered by DeVault on that subject.

Upon insolvency of the Union Casualty Company the United States government required DeVault to furnish an additional surety, which was done, at a cost to DeVault of $775 on the Huntington contract and $200 on the Monongahela contract. He makes claim for $975.

The controlling question in this case is whether the liability of the Union Casualty Company to DeVault was as policy-holder. We cannot escape the conclusion that DeVault was merely a general creditor and that he was in no sense a policy-holder.

DeVault's claim is similar in principle to a claim for unearned premiums, consequently the decision in the case of *McCallum* v. *National Credit Ins. Co.*, 84 Minn., 134, 86 N. W. Rep., 892, is in point.

DeVault's claim is, therefore, disallowed.

THE CLAIM OF THE STATE OF OHIO FOR TAXES.

The state of Ohio claims $2,468.14 for taxes under Section 5433, General Code, for the year 1916. The state asks that its claim "be allowed herein and

that, after the allowance of prior claims of policy-holders in Ohio, in the further distribution of the balance of the fund herein'' it be ordered paid.

The state having accepted this deposit as trustee of an express trust in favor of Ohio policy-holders its claim for taxes would be subordinate thereto.

We are, however, of opinion that as to any surplus due the Casualty Company, or to the liquidator, the state of Ohio would have a right to assert its claim for taxes as a set-off.

*Decree accordingly.*

FERNEDING and KUNKLE, JJ., concur.