AUSTIN, Respondent, *v.* NEW BRUNSWICK FIRE INSUR-
ANCE CO., Defendant, MARYLAND CASUALTY CO.
OF BALTIMORE, Appellant.

(No. 8,085.)

(Submitted October 18, 1940. Decided November 29, 1940.)

[108 Pac. (2d) 1036.]

194

*Messrs. Toomey, McFarland & Chapman,* for Appellant, submitted a brief; *Mr. John W. Chapman* argued the cause orally.

*Mr. C. E. Pew,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This appeal is from a judgment of the district court of Lewis and Clark county in favor of the plaintiff after its order denying a new trial. The trial was had before the court sitting without a jury. The facts out of which this controversy arose are these:

Some time during the month of May, 1929, John G. Brown met Russell H. Hart, one of the members of the firm of Hart & Hart, and discussed with him the purchase by Brown of automobile insurance from the Hart firm. It is undisputed that at the time and for a considerable period afterwards the firm of Hart & Hart was the agent of the two defendant insurance companies with authority to bind the companies as plaintiff alleges they were bound here. The New Brunswick Company did not insure against public liability, but it did, in addition to the other usual coverage, insure against property damage. Where an automobile owner desired "full coverage," including public liability, a so-called "combination policy" was executed whereby the Maryland Casualty Company insured against public liability and also carried the property damage coverage, while the New Brunswick Company carried the other coverages. The New Brunswick Company was the agent for the Maryland Casualty Company for the purpose of executing these combination policies.

Subsequent to the conversation between Brown and the Harts, which we will discuss later, Brown's car collided with that of the plaintiff. Suit was brought by plaintiff against Brown for damage to his car and he recovered judgment, which it is agreed was not paid. This suit was brought by plaintiff under the direct suit clause, hereinafter set out, of the so-called combination policy, which was never issued but upon which plaintiff relies.

The specifications of error question the court's findings that the conversations were sufficient to form an oral contract for insurance between Brown, on the one hand, and the two insurance companies, on the other. Other specifications question the court's rulings on objections to the admission of certain evidence in the form of notes made by the insurance companies' agents—the Harts—,and other specifications raise legal questions involving the application of the statute of frauds. The specifications which raise questions determinative of this appeal are considered in detail later in this opinion.

The first question to be considered is the question of the sufficiency of the evidence to sustain the court's finding that there was an oral contract of insurance. Brown and Russell Hart testified that some time in May, 1929, they met on the street in the city of Helena; that Brown told Russell Hart that he, Brown, was planning a trip to California and that he wanted insurance on his automobile, including public liability, and that after some discussion Russell Hart assured him that he had full coverage. In this conversation and a subsequent one, Brown informed Russell Hart on inquiry that he did not have all the data as to the motor and registration numbers of his car, but that Hart might get them from Brown's stenographer. Some discussion was had as to the premium but no definite figure was given. The testimony is that Brown was told that it would be over $100, and that at that time he paid the Harts $50 and instructed them to charge his account with the balance when it was determined.

Russell Hart left town on business prior to Brown's departure for California. Hart, Sr., was out of town at the time of the

conversations between Brown and Russell Hart and did not return until after the latter's departure. Russell Hart left a note in the office on this transaction addressed to his father. The note—Plaintiff's Exhibit 3—is as follows: "Dad: Have placed a binder on John Brown's car insurance. Made binder for full coverage. He left before I could get dope to make policy. Get car numbers etc. & make F. & T. for 1200.00—Coll. for full coverage and P. L. 10/20 and Pd. lM. Use combination policy. Also see Bossler about more insurance. Russ." The testimony is that "P. L." refers to public liability insurance, and 10/20 to the amount of such insurance.

Subsequently Hart, Sr., talked to Brown and he gave Brown Plaintiff's Exhibit No. 2, called by witnesses "a binder." This instrument was a printed form with the name of the New Brunswick Company printed on it, and it contained a description of Brown's car and some other data, and, though there were places to fill in the kind and amount of insurance desired, the blanks provided were not filled in. The conversation between Hart, Sr., and Brown concerned the policy to be issued and involved an explanation by Brown of what insurance he had contracted for. The testimony is that together they examined the note, Plaintiff's Exhibit 2, heretofore referred to.

Before a policy was issued Brown went to California and returned to Helena where the collision out of which this suit grew, occurred. After the collision, Brown informed the Harts of it, who in turn notified the state agent of the insurance companies. The evidence was uncontroverted as to the conversations, and except for some variance in the testimony as to details, the Harts and Brown testified to the same state of facts.

In its brief appellant stresses what it calls an alteration of Plaintiff's Exhibit No. 3, hereinbefore mentioned, and also the effect of another form instrument bearing in printing the name of the New Brunswick Company only and entitled a "binder." This instrument has the blanks filled in and purports to insure Brown for a period of ten days, but it does not include public liability coverage. Those matters tend to controvert to some

extent testimony supporting plaintiff's view, but they go no further than that.

Appellant admits that under the modern rule (except where the statutes are otherwise), if the minds of the parties have met on the essential parts of the contract it makes no difference whether the form of the insurance contract is oral or written. (See 29 Am. Jur. 145.) In this case appellant argues there was no agreement on the essential parts of the contract,—this for the reason that the premium was not agreed upon, no company was named, and that the term was indefinite.

As to the first point, while the amount of the premium was not definitely stated at the time of the conversation, the testimony is that Brown was told the premium would be well over $100, and that Brown told Russell Hart to charge his account for the premium and that he would pay whatever it was. There was then an express promise to pay a premium which the parties contemplated would be made certain on the study of established rates for the type and amount of insurance contracted for.

"An express agreement upon all details is not necessary; where the contract rests in parol, the terms of the agreement, and the assent of the parties thereto, may be shown by, and implied from, their acts and the attending circumstances, as well as by the words they employed. This is particularly true as to the rate of insurance; where there is no express agreement as to the rate, it will be presumed that the minds of the parties have met that the rate shall be the usual and customary * * * one." (32 C. J. 1096. See *Royal Insurance Co.* v. *Walker Lumber Co.*, 24 Wyo. 59, 155 Pac. 1101, Ann. Cas. 1917E, 1174.)

The cases cited which hold that an essential part of the contract is lacking where the company is not designated and the agent represents more than one company have no application here. Typical of the cases cited and relied upon by appellant on this point is *Hartford Fire Ins. Co.* v. *Trimble*, 117 Ky. 583, 78 S. W. 462, 464; 25 Ky. Law Rep. 1947. In that case the agent represented a number of companies writing the kind of insurance sought. No company was specified in the conversation on which the alleged oral contract was based. The deci-

sion of the court was founded on the fact that, since either one of several companies represented by the agent might have written the insurance, in the absence of a specification of the company, the oral contract was unenforceable against any one of them. There the court used this language: "If the application be made to an agent representing several companies, the particular company or companies to carry the risk must be designated."

The court found that the insurance contemplated here was a ▮ so-called "combination policy," written jointly by the only two companies writing automobile insurance represented by the agent. It could not be written by either one separately, as neither company singly insured against all the risks covered. There could be no ambiguity as to what companies were to carry the insurance.

The evidence as to the term was in some measure conflicting. ▮ The witnesses testified to an agreement as to a definite term, one to one term and another to a different one. They did agree that a term was specified, although differing as to what that term was, and the court's findings that there was an agreement for insurance for a term certain is supported by the evidence. The testimony amply sustained the court's finding that an oral contract was made as contended by plaintiff.

The chief point advanced by appellant is its argument that this contract is unenforceable by reason of the statute of frauds. Error is predicated, under this theory, on the admission of testimony as to the conversations out of which the contract grew. Appellant urges that the contract comes within subdivision 2 of section 7519, Revised Codes. The pertinent portions of that section are:

"What contracts must be in writing. The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or his agent: * * *

"2. A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in section 8175 of this code."

In its brief appellant differentiates between the case where a party to the insurance contract seeks to enforce it, and the case, as here, where an injured third party seeks to enforce some right under it. In the first case appellant agrees that the contract is enforceable, though the statute of frauds has not been complied with. In the latter situation, appellant says the contract comes within subdivision 2 of section 7519. In this case suit is brought under the insolvency clause in the policy. Appellant first argues that since nothing was said in the conversation about the insolvency clause relied upon, there was no right in this plaintiff to maintain the suit.

The rule is that in cases of oral contracts for original insurance it is presumed that the parties contemplated that those provisions contained in policies usually issued to cover like risks. It is not disputed here that if the coverage contemplated was as contended by plaintiff, the policy normally issued would be the combination one containing the clause under which the suit was brought. (See rule in 15 A. L. R. 1008; 69 A. L. R. 568; 29 Am. Jur. 147.)

Does the direct suit clause and suit by the third party change this from a contract to indemnify the insured into a contract to answer for his debt, default or miscarriage? That portion in question is subdivision IV of Clause B of section II of the contract, reading as follows: ''The insolvency or bankruptcy of the Assured shall not release the Company from the payment of damages for injuries or death sustained or loss occasioned within the provisions of this policy; and the prepayment of any judgment that may be recovered against the Assured upon any claim covered by this policy is not a condition precedent to any right of action against the Company upon this policy, but the Company is bound to the extent of its liability under this policy to pay and satisfy such judgment, and *an action may be maintained upon such judgment by the injured person, or his or her heirs or personal representatives, as the case may be, to enforce the liability of the Company as in this policy set forth and limited.''* The appellant argues that this

clause in the policy is one which comes under the guaranty provisions of our statute (subd. 2, sec. 7519) and as such must be in writing. This section contemplates a special guaranty which is defined in 28 C. J. 897 to be ''one which is addressed to a particular person who alone can take advantage of it and to whom only the guarantor can be held responsible.'' The facts in this case demonstrate that there was no special promise made to the plaintiff but the promise was made to the insured, Brown. It could not be considered a general guaranty under section 8171, for in such a case 28 C. J. 897, says that ''a general guaranty is one for acceptance by the public generally, and is so written that any one to whom it is presented may advance money or incur liability upon complying with its terms, and having done so, may hold the guarantor responsible thereon; it is a general promise to any one accepting it to be answerable for a debt or duty in case of the failure or default of another person, who is liable in the first instance.'' The cases cited by appellant are cases wherein the primary purpose was the protection of the third person.

Volume 18, page 821, Words and Phrases, Permanent Edition, defines Guarantee Insurance, as ''a contract whereby one for a consideration agrees to indemnify another against loss arising from want of integrity, fidelity or insolvency of employees and persons holding positions of trust against insolvency of debtors, losses in trade, losses for non-payment of notes, and other evidence of indebtedness, or against other breaches of contract.'' (*National Surety Co.* v. *Breece Lumber Co.*, (10 Cir.) 60 Fed. (2d) 847; *People* v. *Rose*, 174 Ill. 310, 51 N. E. 246, 44 L. R. A. 124; *People* v. *Potts*, 264 Ill. 522, 106 N. E. 524.)

It is plain, therefore, that the ordinary guaranty insurance contemplates a contract which is primarily for the benefit of the third person. In the case at bar the primary intent was to protect the insured rather than the third person, and as such its purpose was indemnity rather than guaranty. (See 5 Am. Jur. 800.)

Furthermore, the direct suit clause in the contract does not set up a guaranty within the meaning of our statute, for the reason that it contemplates no contract collateral to the primary obligation, but specifies that the insurance company shall only be liable on a suit on the *judgment* obtained against the assured. 28 C. J. 889, states: "Although the guaranty when concurrent with the original contract may constitute a part thereof, and be supported by the same consideration, the undertaking of the guarantor, as a general rule, is his own separate and independent contract, distinct from that of the principal debtor." Thus the terms of the contract that relief against the insurance company must be sought through the judgment, negative the contention that this provision is one of guaranty.

That suit may be maintained on this clause is established. (*Zimmerman* v. *Union Automobile Ins. Co.*, 133 Or. 600, 291 Pac. 495; 36 C. J. 1130; *Rose & Son, Inc.*, v. *Zurich General Acc. Co.*, 296 Pa. 206, 145 Atl. 813. See note in 85 A. L. R. 20, and particularly cases found on pages 32, 33, 34; 5 Am. Jur. 800; and see language in *Jacobs* v. *Maryland Casualty Co.*, 198 App. Div. 470, 191 N. Y. Supp. 692, at page 695, where the same clause in a policy is discussed; and see, also, *American Automobile Ins. Co.* v. *Cone*, (Tex. Civ. App.) 257 S. W. 961.)

Subsequent to the collision on which this suit is based, a policy ▮▮▮ was issued by the New Brunswick Company alone. The whereabouts of this contract, from the record, is unknown. The insured testified that he refused to accept it. A draft was given the insured for the damages to his car which bore on it this language: "which payment, evidenced by proper endorsement hereof, will constitute full satisfaction of all claims and demands for loss and damage by *collision* which occurred July 8, 1929, to property described in policy No. 1067 issued at the Montana

City and State
Sub #10110–72       agency."
Agency and State Numbers.

and over the insured's endorsement these words: "In consideration of the sum hereby paid, all claims and demands whatsoever

against the New Brunswick Fire Insurance Company, New York, under this policy by reason of the within mentioned claim for loss and damage, are released, settled and forever discharged." The testimony is that the number 1067 is the number of the issued policy.

Appellant's position is that the acceptance of the draft constituted an acceptance of the New Brunswick policy and that by this the oral cont act was merged in the written policy, and that the court should have disregarded the evidence of the oral contract "as proof of any contract of insurance different from the policy actually issued."

Much of appellant's brief is devoted to this argument and many cases and statutes are cited in support of this view. These cases might have some application were this dispute one between the insured and the insurer; however, in view of the insolvency clause, supra, and the decisions, they have no application here. The rights of the plaintiff, where by provision of the policy or by statute he may maintain suit against the insurer, are to be determined as of the date of the collision out of which this suit grew. The inquiry made by the trial court concerned the contract in force at that time. The general rule is stated in 29 Am. Jur. 817: "The injured person cannot recover against an insurer who has canceled a policy with the insured prior to the time of the accident; but it is generally held that the rule is otherwise regarding a cancellation or settlement after the accident." This has been so held in a number of jurisdictions and no case has been cited or found holding otherwise.

In *Zimmerman* v. *Union Automobile Ins. Co.*, supra, a clause similar to the one here was under consideration. In holding that the insurer and the insured could not act after the injury to the prejudice of the insured person's rights, the court among other things, said: "Well-established principles of law, as well as several adjudications by the courts of other states, return the answer that such a cancellation cannot affect the rights of the beneficiary." (Citing cases.)

By statute in California a provision similar to this clause must be included in the policy of insurance. In *Bachman* v.

*Independence Indemnity Co.,* 112 Cal. App. 465, 297 Pac. 110, 117, the following language is used: "In the jurisdictions which do not recognize the right of an injured person to bring an action on the insurance policy to collect the amount of a judgment rendered against the insured for damages suffered at his hands, the policy is regarded and treated as a private contract of indemnity between the insurer and insured in which no other person may become interested. In the jurisdictions recognizing such a right of action the policy is regarded as a contract between the insurer and the insured for their benefit and for the benefit of an unknown third person who becomes known and identified upon being injured by the insured. The language of our statute authorizing the injured person to file suit against the insurance carrier, after recovery of a judgment against the insured, would indicate that the Legislature intended to adopt the latter rule in California. It would seem a strange and useless proceeding on the part of the Legislature to give to the injured the right to sue the insurer if a recovery in such an action could be defeated by the insurance company and the insured without the knowledge or consent of or any act on the part of the injured person. * * * We are of the opinion that after the happening of an accident coming within the coverage provisions of a policy of insurance, such as we are considering, neither the insurer nor the insured can, by any voluntary act, defeat the statutory right [here contract right] given to the injured person to bring an action on the policy after judgment recovered against the insured without some act or omission on the part of the injured which will relieve the insurer from liability. Of course, collusion or fraud between the insured and the injured to the damage of the insurer, when proven in a proper action, would furnish grounds for the release of the insurer. To adopt any other rule would permit the insurer and insured to revoke or cancel the policy or release the insurer's liability at will after the accident and thus defeat the purpose of the statute, giving the one injured a cause of action against the insurer to enforce his judgment." (See, also, *Mc-*

*Ghee* v. *Casualty Co.*, 15 Ohio App. 457; *Finkelberg* v. *Continental Casualty Co.*, 126 Wash. 543, 219 Pac. 12.)

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ARNOLD concur.

Rehearing denied January 25, 1941.