No. 12353

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

TRANSAMERICA INSURANCE COMPANY
a corporation,

Plaintiff and Respondent,

-vs-

GLACIER GENERAL ASSURANCE COMPANY et al.,

Defendants and Appellants.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellants:

Mulroney, Delaney and Dalby, Missoula, Montana
Stephen H. Dalby argued, Missoula, Montana

For Respondent:

Worden, Thane, Haines and Williams, Missoula, Montana
Shelton C. Williams argued, Missoula, Montana

---

Submitted: December 3, 1973

Decided: JAN 4 1974

Filed: JAN 4 1974

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiff entered by the district court, Missoula County, Honorable Jack L. Green presiding without a jury. The action was to establish liability for claims jointly paid by plaintiff Transamerica Insurance Company and defendant Glacier General Assurance Company pending determination of their respective liabilities.

This action arose out of an accident which occurred on August 6, 1968, when a truck owned by Bob & Ray's Car and Truck Sales rented to Tom Wickes and driven by Robert Barbe, an employee of Wickes, collided with another vehicle causing two deaths. An action was commenced against Wickes, Barbe, and Bob & Ray's as a result of the accident. Transamerica, as insurance carrier for Wickes and Barbe, and Glacier, as insurance carrier for Bob & Ray's, thought it mutually desirable to compromise this action for $50,000 with each insurance carrier contributing $25,000.

A written reservation of rights was entered into under which each insurance company reserved the right to bring an action to determine its respective rights as to the other carrier, subsequent to settlement. This action is founded on that reservation of rights.

The record indicates Robert Peterson was general agent for Glacier and as such was authorized to write auto casualty and liability insurance. This authority extended to accepting applications and proposals for insurance on behalf of Glacier and to binding coverage on behalf of Glacier. Peterson was also actively engaged in the business of renting trucks under the name of Bob & Ray's Car and Truck Sales. The insurance agency and the vehicle rental business were conducted out of the same office and were a part of the same corporate entity. Bob & Ray's entered into an agreement whereby Glacier would insure the vehicles rented by them, with Peterson writing the insurance.

Under the terms of this policy a copy of the rental agreement and a premium of $1.50 per day for each day the vehicle was rented was to be forwarded to Glacier. This policy extended coverage to the named insured, Bob & Ray's, and to anyone using the insured vehicle with the permission of the named insured. This provision goes on to expressly exclude coverage of anyone other than the named insured with respect to any accident arising out of the operation of an "automobile sales agency, repair shop, service station, storage garage or public parking place".

The rental agreement signed by Wickes and which the Glacier policy required to be forwarded to it with the remittance provided in part:

"INSURANCE COVERAGE

"Renter is liable for the first $100.00 Collision damage only. Any & all liability will be carried and covered by Bob & Ray's Car & Truck Sales unless otherwise stated below.

"

"There is no insurance provided on cargo by Bob & Ray's Car & Truck Sales. This must be carried by Renter if desired."

At the time Wickes rented the truck he asked if it was covered by insurance and Peterson replied that it was.

While Wickes had long been involved in the garage and auto storage business, on the date of the accident he no longer had any cars in storage; had disposed of his entire stock in trade; had had his business telephone disconnected; had discharged all his regular employees; and was no longer providing or offering to provide any services. He did have two employees who were engaged solely in cleaning up the building preparatory to Wickes' scheduled final vacation of the premises on August 7, 1968. At the time of the accident the truck was being used to transport some machinery, which had been used in the garage business and for which Wickes had no further use, to Wickes' son in Polson.

On the date of the accident Transamerica had a blanket liability policy containing a garage liability clause issued to Wickes which by its terms extended coverage to his employee Barbe.

The district court granted defendant's motion to dismiss Wickes and Barbe as plaintiffs on the ground they were not real parties in interest. The district court subsequently entered findings of fact that: Peterson and Bob & Ray's had contracted with Wickes to provide all liability insurance on the truck; the contract was binding upon Glacier; the contract inures also to the advantage of Wickes' employee Barbe and to Transamerica; the contract was made by Peterson acting within the scope of his duties as an agent of Glacier and Glacier had knowledge of the language of the agreement; and, Wickes was not on the date of the accident engaged in the garage business. The court also found Glacier was obligated to provide a defense for and to indemnify Wickes and Barbe in connection with the accident and owes to Transamerica $25,000, together with interest amounting to $4,620.

Defendant Glacier raises essentially four issues on appeal:

1) That Glacier was under no contractual obligation to indemnify Wickes and Barbe.

2) That if it should be found that Glacier does have some obligation to indemnify, this obligation is limited to contributing a pro rata share of the total liability.

3) That Transamerica has no claimant's status.

4) That the district court's findings of fact are clearly erroneous.

An additional issue in which Glacier claimed that its coverage was, if anything, "excess" while Transamerica's was "primary" was formally abandoned during oral argument.

Glacier's contention that it was under no contractual obligation to indemnify Wickes and Barbe has two bases. First, Glacier claims that no contract was entered into and second, that if such a contract was entered into this accident is excluded by a policy term excluding coverage of accidents arising out of a garage business.

- 4 -

In reply to Glacier's claim that it was under no obligation to provide insurance coverage to Wickes and Barbe, plaintiff Transamerica urges that the language of the rental agreement used by Glacier's agent Peterson with the knowledge of Glacier, and Peterson's representations at the time the truck was rented are sufficient to create a contract of insurance binding on defendant Glacier. We agree with the district court's conclusion that a binding contract was entered into.

It is undisputed that Peterson was a general agent of Glacier. The rule as to the power of a general agent to bind the insurance company by whom he is employed is clearly stated in 43 Am Jur 2d, Insurance, § 204, which states:

> "No general rule can be satisfactorily evolved which will fit all cases other than that an insurance contract is binding upon the insurer if entered into by an agent acting in such respect within his express, implied, or apparent authority * * *."

This rule has long been the law of Montana. Baker v. Union Assurance Society of London, Ltd., 81 Mont. 281, 264 P. 132.

Peterson combined his activities as an insurance agent for Glacier with the vehicle rental business known as Bob & Ray's. The insurance agency was operated essentially as an adjunct to the rental and sales business with almost all of Peterson's activities as an insurance agent arising out of transactions of Bob & Ray's Car and Truck Sales.

The operation of the truck rental business of Bob & Ray's was covered by a policy issued by defendant Glacier. The terms of this policy required the use of a rental form which was to be forwarded to Glacier. This form provided in pertinent part "Any & all liability will be carried & covered by Bob & Ray's * * *." While as a whole this wording appears to be unique, the word "covered" has been considered in this context by a number of courts.

In Mowles v. Boston Ins. Co., 226 Mass. 426, 115 N.E. 666, the word "cover" when used in the context of insurance was held to

mean "insurance for a reasonable time under all the circumstances".
In Michigan Idaho Lumber Co. v. Northern Fire & Marine Ins. Co.,
35 N.D. 244, 160 N.W. 130 and Hurd v. Maine Mut. Fire Ins. Co.,
139 Maine 103, 27 A.2d 918, a promise by a general agent to hold
a risk "covered" was held to obligate the agent's insurance com-
pany principal to protect against loss from the risk.

In the Montana case Austin v. New Brunswick Fire Ins. Co.,
111 Mont. 192, 108 P.2d 1036, a statement by an insurance agent
that an individual had "full coverage" was held to create an
insurance contract binding on the insurance company. The effect
of a promise that insurance would be "carried & covered" is the
same as a promise to provide "full coverage", to "cover" a risk
or to hold a risk "covered". The clause clearly states the risk
to be insured against by specifying "Any & all liability".

Accordingly, Peterson by the use of this term in the rental
agreement with the knowledge of Glacier, entered into a contract to
insure against any liability that might result from the operation
of the rented truck. As with any insurance agreement entered into
by a general agent acting within the scope of his apparent or
actual authority, this contract entered into by Peterson was binding
on his principal, Glacier. This conclusion is reinforced by the
district court's finding that defendant Glacier had actual knowledge
of the terms of the rental agreement.

Since the foregoing indicates that Glacier was obligated to
insure Wickes and Barbe, we note the uncontradicted testimony of
Wickes is that at the time he rented the truck he inquired specifically
as to insurance and Peterson assured him that insurance coverage
was provided. This assurance would also be sufficient to justify
a finding that defendant Glacier was obligated to provide insurance.
Austin, supra.

Defendant Glacier also claims that even if an insurance
contract was entered into, its policy exclusion relating to acci-
dents which arise in connection with the operation of an "automobile

- 6 -

sales agency, repair shop, service station, storage garage or public parking place" eliminates its liability in this situation. While there was some dispute as to whether or not Wickes was engaged in the garage business at the time of the accident, the district court found Wickes was not at that time engaged in the garage business. This finding is supported by the testimony of Wickes and Barbe that on the date in question there were no longer any cars in storage, the entire stock in trade had been disposed of, and the garage business telephone had been disconnected, all of the regular employees had been discharged, and services were no longer being provided. This is substantial credible evidence in support of the district court's finding that Wickes was no longer in the garage business. As stated in Hellickson v. Barrett Mobile Home Transport, Inc., _____Mont._____, 507 P.2d 523, 30 St. Rep. 289, 291:

> "'Our duty in reviewing findings of fact in a civil action tried by the district court without a jury is confined to determining whether there is substantial credible evidence to support them.'"

Accordingly, since the district court found and that finding is supported by substantial credible evidence that Wickes was no longer engaged in a garage business, we hold Glacier's coverage is not excluded by the policy provision excluding coverage of garage business related accidents.

Glacier's second issue on appeal is the contention that its liability, if any, is limited to the making of a pro rata contribution to settlement. To supports its position Glacier relies on Glacier General Assurance Co. v. State Farm Mutual Auto. Ins. Co., 150 Mont. 452, 460, 436 P.2d 533, where this Court stated:

> "Where, in the absence of the other policy there would be no problem as to the liability of either of one of the companies and the 'other insurance' clauses are the same, the liability is more rationally prorated than arbitrarily laid at the feet of one or the other."

The above quoted case involved two policies which differed only in that one policy covered the driver by name and the other

covered him only as a driver. In the instant case, the differences are far greater. The rental agreement's insurance clause which created the contract of insurance provided specifically that "Any & all liability will be carried & covered". Further, the Glacier policy was entered into for the purpose of providing insurance coverage on the specific risks involved in the use of the truck involved in the accident. These differences provide a rational basis on which to assign defendant Glacier the duty of providing primary insurance coverage. We hold that a contract to provide "Any & all" liability coverage with regard to a specific risk creates an obligation to provide primary insurance of the risk. Therefore, Glacier was obligated to provide primary coverage and is not entitled to contribution of a pro rata share by the secondary insurer, Transamerica.

The third issued raised by Glacier is an assertion that plaintiff Transamerica has no status as a claimant in this action. This claim is without merit. It is well established that when an insurer pays all or a portion of a loss on behalf of an insured, he is subrogated pro tanto to whatever rights the insured possessed. American Equitable Assurance Co. v. Newman, 132 Mont. 63, 313 P.2d 1023; Caledonia Insurance Co. v. Northern Pacific Railway Co., 32 Mont. 46, 79 P. 544. Transamerica by contributing to the compromise settlement agreed to by the insurers made a payment on behalf of the insured. Hence, Transamerica has become subrogated to the rights of Wickes and Barbe. As the discussion of the preceding issues indicates, Glacier was under an obligation to provide insurance coverage for Wickes and Barbe. Had Wickes and Barbe contributed instead of Transamerica, their right to assert a claim against Glacier is unquestionable. Plaintiff Transamerica being subrogated to that right, it is obvious that it does have a status to press a claim against defendant Glacier.

Glacier's final issues is the claim that the district court's findings of fact are clearly erroneous. We have reviewed the entire

record and find the district court's findings amply supported by substantial credible evidence. As stated in <u>Hellickson</u>, our review is limited to determining whether there is substantial credible evidence to support the district court's findings. If there is, as in this case, then the determination of the district court will not be disturbed.

The decision of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.