Van Voorhis, J.
 

 Plaintiff-appellant sought a declaratory judgment determining that it was covered by fire insurance policies when the building burned on May 7,1962 in the City of Canandaigua in which it was about to open a restaurant. Judgment has been rendered, on plaintiff’s case, that there was no insurance coverage. In other words, the trial court ruled and the Appellate Division has affirmed that plain tiff-appellant failed to introduce evidence that there was any insurance in force.
 

 Briefly stated, the circumstances were as follows: The executive officers and principal stockholders of plaintiff corporation
 
 *278
 
 were Seymour Lippman and Dr. Irving Katzman. The general contractor remodeling the building in which the restaurant was to open on long-term lease was Don McWilliams, who lived in Canandaigua and was friendly to defendant Lobdell. The latter was a general agent in Canandaigua for Standard Accident Insurance Company, and he likewise held a brokerage license entitling him to place insurance with other companies on behalf of the applicant. Lippman and Katzman had an insurance program (with over-all premiums of approximately $3,000 per annum) which McWilliams endeavored to steer to Lobdell, Katzman had previously had dealings with an insurance man in Rochester named Posner, who had submitted an insurance program for this restaurant. McWilliams introduced Lobdell to Lippman and Katzman, and they met several times at the restaurant prior to the fire. It is not necessary to narrate what occurred at these meetings, of which there were quite a number, prior to May 4, 1962. On that date Lobdell met with Dr. Katzman at his office in Rochester, bringing with him detailed statements of the types and amounts of insurance on his stationery bearing the name of Standard Accident Insurance Company. A lengthy discussion ensued. The liability insurance coverage proposed by Lobdell was increased by notations made on these statements. Lobdell recommended earnings insurance instead of business interruption insurance, which had been proposed by Posner, to replace the approximate gross earnings of the business during repairs after a fire, inasmuch as earnings insurance would pay a specified sum per month instead of relegating the insured to proof of lost revenue which would be difficult to forecast in the case of a new business.
 

 These statements are in evidence—they describe eight different kinds of insurance which Lobdell proposed. Items 4, 5, 6 and 7 relate to fire (Exhibit 2). Presumably the other coverage, such as protection against liability, workmen’s compensation, disability, theft, or robbery, would be written by Lobdell as broker. The four types of fire insurance policies would normally be issued by Standard of which Lobdell was general agent. These items, on Lobdell’s statement bearing Standard’s name, set forth $35,000 fire insurance with extended coverage, a $10,000 extended fire policy on improvements and betterments, $4,000 on open stock and $64,000 on earnings (the latter stated to be
 
 *279
 
 payable at $16,000 per month while the restaurant remained out of operation due to repairs necessitated by fire).
 

 Katzman told Lobdell, at this conversation on May 4, that this was the insurance that he wanted, and testified that he asked Lobdell what he ‘ ‘ would have to do in order to take these policies out, and he said, All you have to do is to tell me now, ,or if you can’it tell me now, to call me, and you are covered.” This testimony follows:
 

 “ Q. What was said about payment? A. There was — he said it wasn’t necessary for me to write out a check at the particular time that I took it, that I wanted the insurance in force; that he would bill me for it, and I told Mr. Lobdell that I am sure he will get the insurance, but I felt that I still had an obligation to Mr. Posner in view of the fact that he had gone over this program with me; he had helped me with it, and I said, why don’t you let me talk to Mr. Posner first, and then I’ll contact you in the next day or so in order to call you, and then you will cover me just as you told me here, because evidently, because according to his statement all I had to do was to call him in a day or so and tell him I wanted the insurance. ’ ’
 

 The deposition of Lobdell, read into evidence in behalf of plaintiff, confirms this conversation. In that examination before trial, to be sure, he testified that he told Katzman that it would be necessary for him to broker out some of the fire insurance, in which respect his testimony differed from that of Katzman, who testified that Lobdell told him that the fire policies would be taken by Standard, of which he was general agent, which would have the advantage that their regional office was situated behind the restaurant and that in case of fire their adjusters would be there as soon as the firemen.
 

 This discrepancy between these two witnesses might be of some importance in deciding questions of fact at a trial, but judgment has thus far gone against plaintiff without passing on the facts on the theory that no prima facie case has been presented.
 

 Dr. Katzman testified that after talking with Lobdell on May 4,1962 he contacted Posner and told him his reasons for placing the insurance' through Lobdell. The next occurrence of importance, and the day on which the binder is alleged to have been made, was Sunday, May 6, 1962, when Lippman, Katzman
 
 *280
 
 and McWilliams were at the restaurant in Canandaigua. Katzman and Lippman testified that three times they tried to reach Lobdell by telephone to place the insurance with him, but that his telephone did not answer. They left for Rochester after McWilliams said that he would telephone to Lobdell that evening and place the insurance with him for plaintiff. There is no question that McWilliams was authorized to do this on behalf of plaintiff by Katzman and Lippman, or that Lobdell so understood. It has likewise been found that Lobdell was authorized by Standard to make fire insurance binders in his discretion.
 

 McWilliams testified that on the evening of May 6 he talked to Lobdell on the telephone, in a conversation in which " I told Bob that he owed me the steak dinner, that he had the insurance on the restaurant.” McWilliams testified that Lobdell replied that he was very happy about the situation and made ‘ ‘ a remark to the effect that he certainly was happy to buy me a steak dinner.” This was an allusion to McWilliams’ previous testimony that Lobdell had told him that if he got the insurance he was to buy him a steak dinner. In his deposition Lobdell admitted the substance of the conversation, as testified to by McWilliams, except that he was somewhat equivocal about the steak dinner. Lobdell admitted that McWilliams told him that they had tried to reach him earlier during that afternoon.
 

 ■ The reason given by the trial court for holding against plaintiff on the law was that according to this testimony Lobdell on the evening of May 6 had not given “ a plain, unequivocal, unqualified, unmodified statement that the proposed assured is protected”. Although it is true that this conversation on the evening of May 6, as narrated by McWilliams, would not, in itself, be enough, we consider that, when it is taken in conjunction with Dr. Katzman’s testimony that Lobdell had told him two days previously at the conference in his office in Rochester that “ all you have to do is to tell me now, or if you can’t tell me now, to call me and you are covered ” and that Katzman replied “ Then I’ll contact you in the next day or so in order to call you, and then you will cover me just as you told me here ”, it is enough prima facie to spell out a binder. No set form of words is necessary, provided that it be clear that the words employed expressed an intention to make the bargain.
 

 
 *281
 
 No question can arise with respect to the power of an insurance .company to be bound in such manner, inasmuch as subdivision 3 of section 168 of the Insurance Law, insofar as material, provides: ‘ Binders or other contracts for temporary insurance may be made, orally or in writing, for a period which shall not exceed sixty days, and shall be deemed to include all the terms of such standard fire insurance policy and all such applicable endorsements, approved by the superintendent, as may be designated in such contract of temporary insurance .
 

 Specimen forms of standard policies of fire insurance of the kinds in controversy were introduced in evidence, which were testified by Standard’s manager of the Western New York Branch to be its standard policy forms for such types of insurance approved, in addition to the Superintendent of Insurance, by the National Bureau of Casualty Underwriters and the New York Fire Bating Association. It was also testified by the said manager and Lobdell that it was customary to issue binders and that the insured did not need to pay a premium in advance of coverage.
 

 The trial court said that the circumstance that
 
 “
 
 Standard would take apparently ten thousand dollars of the fire ’ ’ and that Lobdell ‘ ‘ was going to have to find out what company would take what part of it ” had a bearing upon whether he issued a binder to plaintiff on behalf of Standard. That referred to an intra-office communication of Standard, according to the testimony of the manager, that he had informed Lobdell that Standard would write but $10,000 of this risk. Such a communication between representatives of Standard would not be binding on plaintiff, unless brought to plaintiff’s attention. What counted was Lobdell’s apparent authority, not any secret limitations upon his actual authority which may have been imposed by Standard in this particular instance. This familiar rule was applied to general agents of insurance companies in
 
 Steen
 
 v.
 
 Niagara Fire Ins. Co.
 
 (89 N. Y. 315, 326) and
 
 Woodruff
 
 v.
 
 Imperial Fire Ins. Co. of London
 
 (83 N. Y. 133, 140). Conduct by insurance agents in excess of their actual authority as binding on the principal is illustrated in the life insurance field by such decisions as
 
 Sternaman
 
 v.
 
 Metropolitan Life Ins. Co.
 
 (170 N. Y. 13) and
 
 Bible
 
 v.
 
 John Hancock Mut. Life Ins. Co.
 
 (256 N. Y. 458). Since Lobdell was clothed with apparent authority
 
 *282
 
 by Standard to issue fire insurance binders of the nature involved, oral testimony that Lobdell had been limited by Standard to $10,000 coverage in this specific case has no bearing on the issue unless plaintiff was apprised thereof. It is true that in his deposition Lobdell testified that he told Katzman that he would need to broker out some of the fire insurance, but Katzman did not so testify. It must be borne in mind that decision has gone against plaintiff on the law alone.
 

 Insofar as the second cause of action is involved, against Lobdell personally, the trial court and the Appellate Division were correct in holding that it had not been established as matter of law. If Standard proves to have been bound to these fire insurance policies, no claim is made against Lobdell. Upon the other hand, if the conversations were not sufficient to express a binder, there would be no basis on which to hold him anyhow.
 

 Defendants had no opportunity to introduce evidence at the trial in their own behalf, inasmuch as decision went against plaintiff on the law on the evidence introduced by plaintiff alone.
 

 The order appealed from should be affirmed insofar as it rules in favor of the individual defendant Lobdell, and otherwise be modified by remitting the first cause of action to Supreme Court to try the factual issue of whether Standard Accident Insurance Company became bound to any or all of the four types of fire insurance claimed by plaintiff, the extent of coverage and the amount of damage, with costs to respondent- Lobdell against appellant and with costs as between appellant and respondent Standard Accident Insurance Company to abide the event.
 

 Chief Judge Desmond and Judges Dye, Fold, Burke, Scileppi and Bergan concur.
 

 Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to respondent Lobdell against appellant and with costs as between appellant and respondent Standard Accident Insurance Company to abide the event, and matter remitted to Supreme Court for further proceedings not inconsistent with the opinion herein.