[S.F. No. 22576. In Bank. Jan. 31, 1968.]

GRANCO STEEL, INC., Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, NAMON ROBINSON et al., Respondents.

Graham & James, John M. Collette, Leonard, Goshkin & Bancroft, Edmund D. Leonard and Jack A. Pollatsek for Petitioner.

Everett A. Corten, Selma Mikels, Sedgwick, Detert, Moran & Arnold and C. Gordon Taylor for Respondents.

SULLIVAN, J.—Granco Steel, Inc. (Granco), a California Corporation, brought this proceeding before the Workmen's Compensation Appeals Board (Board) in order to determine whether it was covered by workmen's compensation insurance on the date of an industrial injury to one of its employees. The referee determined that Granco was not so covered and dismissed from the proceeding the alleged insurer, the Hartford Accident and Indemnity Company (Hartford).[1] The Board denied reconsideration, and we granted a writ of review. (Lab. Code, § 5950 et seq.)

Granco was incorporated on November 1, 1965. On November 23, 1965, Aaron Hillman, Granco's vice-president, made arrangements regarding general liability, workmen's compensation, and other insurance with Ben J. Weiss, a general agent representing Hartford, as well as other insurance companies. Weiss provided oral binders in order to afford immediate coverage, and in January 1966 Hartford issued to Granco a "comprehensive general-automobile liability policy" and a workmen's compensation policy—both policies effective as of November 23, 1965. Apparently these policies

---

[1]Ben J. Weiss, doing business as Ben J. Weiss Insurance Agency, was also named as a defendant in the matter but was dismissed as a party on the ground that his liability, if any, was not that of an insurer.

were sent to Weiss but were not immediately delivered by him to Granco.

In February 1966 Weiss sent Granco a bill for the premiums due on the above policies, which reflected a premium of $131 for the workmen's compensation policy.[2] Upon receipt of the bill, Hillman telephoned Weiss, informed him that Granco had not yet hired any employees and did not anticipate doing so for some time, and requested that the policy be cancelled. It was agreed that Granco should contact Weiss as soon as employees were hired, and that Weiss would thereupon recommence the workmen's compensation coverage.[3] Accordingly, on February 10, 1966, Weiss wrote to Hartford, explained the situation, and requested that the workmen's compensation policy be ''cancelled flat.''[4] The letter also stated: ''We are however retaining the 54 LGX 143249 contract [the general liability policy] and if and when they set-up [sic] their operations and have employees we will request the compensation contract.''

It does not appear that a copy of this letter was sent to Granco. However, Weiss wrote to Hillman on the same day and advised him that the workmen's compensation policy had been returned to Hartford for flat cancellation, and that ''If and when, Granco does have employees, kindly advise so that the other coverages can be issued.'' Enclosed with this letter were the general liability policy, which had not been previously delivered by Weiss to Granco, and an invoice for the premium for that policy.

---

[2] In the report on decision the referee found that the bill ''indicated'' that the workmen's compensation policy had been issued by Hartford. At oral argument counsel for the Board pointed out that the record does not expressly show that the identity of the insurer was shown on the bill. Our examination of the reporter's transcript and exhibits has convinced us that the Board is correct in this regard, although we observe that Hartford's answer to Granco's petition for hearing in this court states that ''Mr. Hillman received a billing for workmen's compensation insurance covering Granco Steel, Inc. for a policy issued by Hartford Accident & Indemnity Company . . . .'' In any event we have concluded, as will appear below, that the state of Granco's knowledge as to the specific identity of the insurer on its workmen's compensation risk is not a factor crucial to the result herein.

[3] Hillman testified before the referee that his agreement with Weiss was that the latter should ''hold the policy in abeyance, and when we started our own bookkeeping system, and paid our own payroll out of Granco, that I was to notify him of this fact, and he would put the policy back into effect.''

[4] At oral argument we were advised that a policy or binder which is ''cancelled flat'' is cancelled without payment of a premium for the period of effective coverage.

Prior to February 17, 1966, Granco began to hire employees, and on that date William Granberg, its president, telephoned Weiss at the latter's office. Weiss was not there but one of his employees, Ethel Lerche, who answered the telephone, upon being told by Granberg the purpose of the call, said that she could help him. Arrangements were then made for an indorsement upon the general liability policy to provide coverage on an automobile which Granco was leasing for one of its salesmen. According to testimony given by Granberg and corroborated by other evidence, he also requested that workmen's compensation coverage be recommenced, and Mrs. Lerche asked questions concerning the number of employees and their identities. It was Granberg's understanding that coverage for all employees was effected by this telephone call. Granco's payroll commenced on February 28.

On April 18, 1966, Namon Robinson, one of Granco's employees[5] was severely injured in the course of his employment. Upon being notified of the accident, Weiss sent one of his employees to the scene with a Hartford report-of-injury form to be filled out. Later in the day, however, Weiss informed Hillman that Granco was not covered by workmen's compensation insurance.

At the hearing Weiss testified that he was not in his office on February 17 when Granberg spoke by telephone with Mrs. Lerche; that the latter had in turn telephoned Weiss at home about general liability coverage for the leased car;[6] that she had not discussed with him the matter of Granco's workmen's compensation insurance; and that had a request for renewed coverage been made, he would have been under no obligation to place the Granco risk with Hartford rather than one of the other insurance companies which he represented.[7] He also testified, however, that at the time of the cancellation of the original workmen's compensation policy he intended to place future coverage with Hartford when Granco obtained employees; that when he notified Hartford that the original

[5]According to Granberg's testimony, Robinson was one of the employees whose names were given to Mrs. Lerche on February 17 for workmen's compensation coverage.

[6]The indorsement covering the leased automobile was issued by Hartford on May 19, 1966—effective from February 17, 1966.

[7]It appears that neither Granberg nor Hillman at any time requested that Weiss place any Granco coverages with a particular company; they left the matter of choosing insurers entirely to him.

policy was to be cancelled, Hartford offered no objection to accepting Granco's workmen's compensation risk when coverage became necessary in the future; and that, following the April 18 accident involving Robinson, he (Weiss) provided an oral binder to Granco for future workmen's compensation coverage with Hartford, but Hartford later refused to issue a policy.

Mrs. Lerche testified that she had received Granberg's call on February 17 and had discussed with him the indorsement regarding the leased automobile, but that she had no record or recollection of any request for workmen's compensation coverage at that time.

As disclosed by the report on decision, the referee determined that Granberg had requested workmen's compensation insurance in his February 17 telephone call, but that Mrs. Lerche, although authorized to make oral binders on such coverage, had overlooked doing anything about the matter and had then forgotten about it. It was further determined that the February 17 conversation was insufficient to bind Hartford : "Hartford has done nothing to mislead any party and did not make any agreement to accept this insurance. There was no reason why Mr. Weiss could not have placed it with any of a number of other compensation insurance carriers except that having placed it with Hartford once, he probably would have placed it with them again. This is not sufficient to bind Hartford." The referee formally found that Robinson was employed by Granco at the time of his industrial injury on April 18, 1966; and that on said date Granco was uninsured as to workmen's compensation[8] but not wilfully so and ordered that Hartford be dismissed as a party defendant in the proceeding. Granco's petition for reconsideration was denied by the Board.

██ It is of course clear that the scope of this court's review of orders and decisions of Workmen's Compensation Appeals Board does not extend to a redetermination of factual questions decided upon the basis of substantial evidence. (Lab. Code, §§ 5952-5953.) Of the several factual determinations made by the Board herein, only that finding dealing with the content of the billing on the initial workmen's compensation policy (see fn. 2, *ante*) is now challenged

---

[8]The referee set forth this conclusion under the heading "FINDINGS OF FACT." However, as we shall point out below, the determination of whether Granco was insured at the time of the Robinson accident necessarily involves questions of both fact and law.

by the Board as lacking in evidentiary support;[9] therefore, with the single indicated exception, we accept the factual determinations of the Board. It appears, however, that the ultimate finding of the Board, that Granco was not covered by insurance at the time of the Robinson accident, necessarily rests upon a determination that no oral binder of Hartford occurred prior to such accident. That determination clearly involves questions of both fact and law. Insofar as the finding comprehends issues relating to the credibility of witnesses or the weight of the evidence, the questions are of fact. However, insofar as the finding embraces a conclusion that such factual elements do not constitute a valid oral binder, a question of law is presented. (See, in another context, *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 115 [251 P.2d 955]; see generally Netterville, *Administrative "Questions of Law" and the Scope of Judicial Review in California* (1956) 29 So.Cal.L.Rev. 434; see also authorities collected in *Yakov* v. *Board of Medical Examiners* (1968) *ante,* pp. 67, 74 fn. 7 [64 Cal.Rptr. 785, 435 P.2d 553].) We proceed to examine that question of law.[10]

 "It is now settled law that insurance companies may enter into binding parol contracts to issue new policies, to renew existing policies or to transfer existing insurance from one location to another. . . . ' "The very reason for sustaining such contracts is, that the parties may have the benefit of them during that incipient period when the papers are being perfected and transmitted." ' " (*Lumbermen's Mut. Ins. Co.* v. *Slide Rule & Scale Engineering Co.* (7th Cir. 1949) 177 F.2d 305, 308; see also *Parlier Fruit Co.* v. *Fireman's etc. Ins. Co.* (1957) 151 Cal.App.2d 6, 19 [311 P.2d 62].) Preliminary contracts of this nature, known as "oral binders," may be effected on behalf of an insurer by any agent possessing the authority to bind the company by contracts of insurance generally. (44 C.J.S., Insurance, § 230, p. 957; see generally Annot. (1967) 14 A.L.R.3d 568; see *Apparel Mfrs. Supply*

[9]Thus, it is not urged that we reexamine the referee's underlying determinations that Mrs. Lerche (1) had authority to enter into oral binders on Weiss' behalf, and (2) was notified by Granberg on February 17 that workmen's compensation coverage was to begin immediately.

[10]The Board's characterization of its ultimate finding as a "finding of fact" (see fn. 8) of course cannot insulate that finding from review insofar as it involves determinations of law. We take judicial notice that it is not the practice of the Board to draw a scrupulous distinction between factual findings and legal conclusions. (See Workmen's Compensation Practice (Cont.Ed.Bar 1963) §§ 10.1-10.2, p. 306.)

*Co.* v. *National Auto. & Cas. Ins. Co.* (1961) 189 Cal.App.2d 443, 454 [11 Cal.Rptr. 380]; *Parlier Fruit Co.* v. *Fireman's etc. Ins. Co., supra,* 151 Cal.App.2d 6, 20.)

As with all contracts of insurance, it is necessary that the identity of the insurer be established if liability is to be predicated upon an alleged oral binder. ''Some difficulty on the score of the identity of the insurer exists where, as is often the case, an agent represents more than one insurance company. The element of identity is satisfied where the agent, being authorized to do so, *designates* the company which is to carry the risk.'' (Italics added.) (1 Couch on Insurance (2d ed. 1959) § 14:19, p. 597.)

It is clear that ''designation'' does not imply a meeting of the minds of the insured, the agent, and the insurer. ''When the agent represents several companies and selects certain [or one] of them to be bound by the risk, he is contracting for undisclosed principals. Each of the companies he represents has intrusted him with the agency, and must be held to have given him authority as such agent to select it as the one to bear the risk. Such authority springs inevitably from his authority to make insurance contracts. The insured cannot be permitted to suffer because the agent fails to disclose at the time of making the contract which of several principals he binds.'' (*Lumbermen's Mut. Ins. Co.* v. *Slide Rule & Scale Engineering Co., supra,* 177 F.2d 305, 309; see *Apparel Mfrs.' Supply Co.* v. *National Auto. & Cas. Ins. Co., supra,* 189 Cal.App.2d 443, 455; *Parlier Fruit Co.* v. *Fireman's etc. Ins. Co., supra,* 151 Cal.App.2d 6, 24; *Guipre* v. *Kurt Hitke & Co.* (1952) 109 Cal.App.2d 7, 14 [240 P.2d 312]; *Sholund* v. *Detroit Fire & Marine Ins. Co.* (1933) 172 Wash. 111 [19 P.2d 395].) It is also clear, however, that if the agent fails to specifically designate an insurer, or if there are no facts from which designation can be inferred, the binder is ineffective. (Cf. *K.C. Working Chemical Co.* v. *Eureka Security etc. Ins. Co.* (1947) 82 Cal.App.2d 120, 134-135 [185 P.2d 832]; *Walters* v. *West American Ins. Co.* (1935) 4 Cal.App.2d 581 [41 P.2d 355, 43 P.2d 306].)

In most cases wherein the identity of the insurer is in issue, the agent has undertaken some affirmative act of designation *after* he has been notified of and has accepted the placement or reinstatement of coverage. (See *Lumbermen's Mut. Ins. Co.* v. *Slide Rule & Scale Engineering Co., supra,* 177 F.2d 305, 307.) However, such an affirmative act is not always

necessary to effect a designation. When, for instance, the agent represents only one company dealing in the kind of insurance at issue, or where there is a "lead company" with which the subject coverage is usually placed, coverage may be effected through an oral binder in the absence of an affirmative act of designation on the part of the agent. (See *Apparel Mfrs.' Supply Co.* v. *National Auto. & Cas. Ins. Co., supra,* 189 Cal.App.2d 443, 453-455; *Guipre* v. *Kurt Hitke & Co., supra,* 109 Cal.App.2d 7, 17; *Preferred Risk Fire Ins. Co.* v. *Neet* (1935) 262 Ky. 257, 262 [90 S.W.2d 39]; *Cees Restaurant, Inc.* v. *Lobdell Agency* (1965) 15 N.Y.2d 275 [206 N.E. 2d 180]; cf. *Austin* v. *New Brunswick Fire Ins. Co.* (1940) 111 Mont. 192 [108 P.2d 1036].) In such cases it is reasoned that an affirmative act of designation would be superfluous, for the circumstances clearly indicate the insurer to be bound. Designation in such a situation is a foregone conclusion, and the identity of the insurer is determined upon the agent's oral agreement to place the risk.

It is clear of course that the facts of the instant case will not admit of such a solution. Weiss could have placed the Granco risk with any of several insurers represented by him. Further, according to his uncontradicted testimony, he had made no decision at the time of the injury as to which of these insurers he would call upon to bear the Granco risk, and, in fact, he had given the matter no thought subsequent to the cancellation of the initial Hartford policy. There is some indication, on the other hand, that at the time of such cancellation, he formed an intention to place the risk again with Hartford when Granco obtained employees. In the circumstances we cannot say that the designation of Hartford by Weiss would be a foregone conclusion requiring no affirmative act of designation subsequent to the agent's oral agreement to place the risk.

It is also clear, however, that in some circumstances the acts of an insurer or its agent *prior* to an oral agreement will be sufficient to estop the insurer from denying coverage. Although we are aware of no reported decision of a California appellate court discussing specifically what circumstances must exist in order to raise such an estoppel, the case of *Hartford Acc. & Indem. Co.* v. *Industrial Acc. Comm., Everett P. Wingfield et al.* (1966) 31 Cal.Comp. Cases 57 (writ of review denied without opinion, March 9, 1966, Court of Appeal, 1st Dist., Div. 1) demonstrates the application of the

principle. There a partnership had obtained a Hartford workmen's compensation policy through a general agent who represented several other companies in addition to Hartford. This policy did not cover the partners personally. After issuance of the policy, the partnership was incorporated, and the insurance agent was requested to take steps to change the coverage to insure the new corporation. The contemplated new policy would have covered officers of the corporation. Apparently the agent did nothing in furtherance of the changed coverage, and some months later Wingfield, an officer of the corporation and a former partner in the partnership, was injured in the course of his employment. The referee held that under these circumstances Hartford was estopped to deny coverage. "In his report on decision, the referee stated that the insurance company, through its agent, intended that the insured rely, and the insured did rely, to their damage, upon the representation that they were covered by workmen's compensation insurance." (31 Cal.Comp. Cases at p. 59.) In seeking a writ of review Hartford contended that the conduct of the agent did not bind Hartford because he was agent for several companies and did not inform the insured that Hartford would bear the corporation's workmen's compensation risk. It was the position of the insured that "the history of dealings" between the insured and Hartford through the agent "would have justified [the insured] in believing that coverage for the corporation would be with Hartford." (31 Cal.Comp. Cases at p. 59.) Hartford's petition for writ of review was denied without opinion.

We of course appreciate that the *Wingfield* case involved facts different from those of the case at bench. We are of the view, however, that the principle of estoppel adopted by the referee and the Board in *Wingfield* was properly applicable in the circumstances of that case, and that that principle is equally applicable to the facts of the case at bench.

Our views in this respect have support in other jurisdictions where principles of estoppel have been applied to similar questions.

In *Western Nat. Ins. Co.* v. *LeClare* (9th Cir. 1947) 163 F.2d 337, a decedent had conveyed real property to plaintiffs LeClare. Upon the decedent's death, however, the property was included among the assets of the decedent's estate and probate proceedings were necessary in order to determine that it belonged to plaintiffs LeClare and not to the decedent or to the latter's estate. During the decedent's lifetime and prior

to her conveyance to the LeClares, the property had been insured against fire damage by defendant company through its agent Raymond, who represented seven fire insurance companies in addition to defendant. After decedent's death Raymond engaged in a series of conversations with the LeClares whereby it was agreed that Raymond would provide or continue fire coverage on the property, with payment of premium to be deferred until the matter of ownership had been finally determined by the probate court. Prior to such determination, which was ultimately made in favor of the LeClares, the property was destroyed by fire.

On appeal from a judgment in favor of the LeClares the defendant insurance company urged that it had not been designated by Raymond as the insurer prior to the fire. In rejecting this contention the court said: "Raymond represented appellant and seven other fire insurance companies. Mr. and Mrs. LeClare knew that he represented appellant, but, so far as the evidence shows, they never knew that he represented any other company. They dealt with him, and he with them, not as the agent of a group of companies, but as the agent of a single company, namely, appellant. The contract, therefore, made appellant the insurer of the house." (163 F.2d at p. 340.) Although the court did not emphasize that all earlier policies on the property were issued by defendant through Raymond, we do not overlook the possibility that this factor had a significant bearing on the court's determination.

In *Employers Cas. Co.* v. *Winslow* (Tex.Civ.App. 1962) 356 S.W.2d 160 (application for writ of error refused), the elements of prior dealing and transactional continuity were given specific consideration. There plaintiff Winslow, who was in the process of constructing an ore mill, contacted one Davis, an insurance agent apparently representing several companies, for the purpose of obtaining various policies of insurance covering the mill and activities therein. The defendant company, through Davis, issued to Winslow a comprehensive liability policy and a separate automobile policy. On November 29, 1958, the defendant company issued a 30-day binder for fire insurance coverage, which binder was twice renewed for 30-day periods. No policies of fire insurance were issued on these binders, and no premiums were paid, although conversations were had between Winslow and Davis as to the premium that would apply if such policies were issued.

Eventually, after the binders had been issued, it became necessary to shut down construction on the mill. Winslow informed Davis, the agent, "that no more insurance was needed until they were ready to start up, at which time they would contact Davis again and make arrangements for the fire insurance policy." (356 S.W.2d at p. 162.) During the summer of 1959 Davis, who was about to leave on a vacation, told Winslow that if he wished to reinstate the fire insurance in Davis' absence "all they had to do was put in a telephone call to his office telling when they wanted the insurance to go into effect and the office would take care of it." (356 S.W.2d at p. 163.) On August 7, 1959, while Davis was out of the office, Winslow gave the former's receptionist a check for $500, which was approximately one-third of the yearly premium previously discussed. The name of the payee on the check was left blank because, as Winslow explained at trial, " 'I didn't know which of these three companies our various policies were with' " but " 'I would assume that he (Davis) would know which company to put it in.' " (356 S.W.2d at pp. 165-166.) Later the same day Davis telephoned Winslow and in response to the latter's inquiry told Winslow that he was "covered" and that he would be billed for the balance of the premium.

On September 14, 1959, the ore mill was destroyed by fire. Defendant company denied liability and sent to Winslow a company check for $500 with the message: " 'We hand you herewith check for $500.00 which was conditionally left with our cashier on or about August 7, 1959.' " (356 S.W.2d at p. 164.) Winslow's cancelled check, which was admitted into evidence, showed that while it bore the indorsement of the defendant company[11] no name of a payee had been filled in.

On appeal from a judgment for plaintiff Winslow, the defendant company contended that the parties to the contract had not been established because the agent had undertaken no affirmative act of designation subsequent to being notified that fire insurance was to begin again. The court rejected this con-

---

[11]The indorsement was as follows: "For deposit only. Texas Employers' Insurance Association, Employers Casualty Company [defendant], Employers National Insurance Company." Although the opinion does not specifically indicate the reason for this kind of indorsement, it is conceivable that the agent indorsed for deposit checks made out to any one of the companies he represented by means of a single stamp bearing the name of all of his principals and segregated the monies by depositing in the account of the proper principal.

tention: "Winslow had the right to conclude that the same company that wrote the binders for fire and extended coverage, as well as his other policies, would write the requested policy for which he left his $500.00 check, even though the name of the company escaped him at the time;[12] and it was that company (appellant herein) which was one of the endorsers on his check and who later, after the fire, tendered a return of this premium payment to Winslow. We feel that there was a meeting of the minds as to the intended insurer, and the jury so found." (?56 S.W.2d at p. 166.)

As emphasized above, we realize that the *LeClare* and *Winslow* cases, as well as the Board's *Wingfield* decision, arose in factual contexts which differ in some respects from one another, as well as from that of the case at bar. We further recognize that in each of those cases the trier of fact determined that designation *had* occurred, whereas in the instant case the trier of fact has determined that designation *had not* occurred, prior to the accident. However, as we have already explained, we have accepted the relevant facts as determined by the Board. The question now confronting us is whether under those facts we are impelled as a matter of law to the conclusion that Hartford is estopped from claiming that it was not Granco's designated insurer and from denying coverage.

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; see *Cigarette Concessions Inc.* v. *City of Los Angeles* (1960) 53 Cal. 2d 865, 869-870 [3 Cal.Rptr. 675, 350 P.2d 715]; *Safway Steel Products, Inc.* v. *Lefever* (1953) 117 Cal.App.2d 489, 491 [256

---

[12]We note that the *Winslow* court attached little significance to the fact that the insured was apparently ignorant as to the specific identity of the carrier which the agent had previously designated and which had actually issued the earlier policies. The important consideration in *Winslow*, as in the instant case, was that the insured, justifiably relying upon the representations of the insurer and its agent, concluded that certain acts undertaken by him were sufficient to recommence coverage by that company (whatever its specific identity) which had previously insured the risk in question.

P.2d 32].) ██ Clearly, the facts of this case, as found by the referee and the Board, establish each of the indicated elements.

It is notable that in the instant case, as in *LeClare*, *Winslow* and *Wingfield*, the insurer whose designation was in question had prior to loss engaged in dealings with the insured relative to the subject risk or one closely related thereto.[13] Here Hartford had issued a policy upon the precise risk in question, which policy had been cancelled (as in *Winslow*) when the need for it had temporarily disappeared. Further (and again as in *Winslow*), such cancellation was accompanied by representations on the part of the agent that similar coverage would again be provided when the need therefor arose and that such new coverage would become effective when the agent was notified that it was needed. Under the circumstances, Granco's officers had a right to believe that coverage would be resumed with the carrier originally on the risk.[14] Indeed, the record shows that it was clearly the intention of the agent Weiss at the time he attended to the cancellation of the original policy to place the renewed coverage with Hartford when Granco gave the word. As we have seen, Weiss advised Hartford to that effect by letter. When the contemplated need for coverage arose, Granco did precisely what it had been told it must do in order to obtain coverage: it communicated with the office of Hartford's agent (Weiss), notified a person authorized to issue binders (Mrs. Lerche) that the need for coverage had arisen, and answered her questions as to the nature and extent of the risk. (Cf. *Cees Restaurant, Inc.* v. *Lobdell Agency, supra*, 15 N.Y.2d 275, 279-280.)

Much is sought to be made of the fact that Weiss was under no *obligation* to place the coverage with Hartford rather than with one of the several other insurers which he represented, and of the additional fact that Granco had left to Weiss' discretion the determination of *which* insurers were to bear its various insurance risks. These factors are not determinative of the problem now confronting us. Under the circumstances of the instant case, Granco, relying upon the conduct and statements of Weiss, was entitled to assume, in the absence of any

---

[13]As pointed out above, Hartford was also Granco's general liability carrier.

[14]Hillman testified that, although Granco gave no specific direction that the insurer on the former policy was to be bound again upon notification to Weiss, "we assumed it would have been the same company."

information to the contrary, that upon its providing Weiss with the contemplated notification, coverage would immediately recommence with the company which had formerly carried the risk. In the light of the referee's determinations, we cannot sort out the factual ingredients of the problem and impound them within separate and isolated time chambers. We must view the problem as it emerged in actual life—in a continuum. We behold, not separate unrelated performances, but the same play, albeit in more than one act, presenting the development of one plot, with the principal actor, Weiss, appearing throughout in the same role as Hartford's agent. Hartford was aware of this continuing relationship which its agent had thus established with Granco and indeed had been given some intimation by the agent of the possibility of renewed contractual arrangements.[15] Hartford, having chosen to conduct its insurance business through an agent, should not be permitted to deny coverage when, as here, the agent and the insured have established a relationship looking towards the recommencement of coverage once arranged for but, as it were, temporarily discontinued, and the insured has taken the very steps contemplated by them to continue the same coverage. We hold, therefore, that under the circumstances of the instant case, Hartford is estopped from denying coverage.[16]

The order dismissing Hartford Accident and Indemnity Company as a party to the proceeding is annulled and the cause is remanded to the Workmen's Compensation Appeals

[15]These factors highlight the distinction between the instant case and *K. C. Working Chemical Co.* v. *Eureka-Security etc. Ins. Co., supra,* 82 Cal.App.2d 120. There the broker of the insured sought to place the latter's fire risk through an agency which represented several fire insurance companies. The agency had had no prior dealings with the insured, had never handled insurance relative to the risk sought to be covered, gave no assurances at the time of application or thereafter that a binder had been effected, undertook no acts indicating that a specific insurer was to be bound on the risk, and engaged in no activities leading to the placement of the risk. It was properly held that no binder was effected. (82 Cal.App.2d at pp. 134-135.)

[16]We have excluded from our consideration herein the facts that subsequent to the accident Weiss sent an employee to the scene with a Hartford claim form to be filled out, and that shortly thereafter Weiss purported to enter into an oral binder on Hartford's behalf with Granco. Acts undertaken subsequent to the occurrence of the loss cannot in themselves effect a designation (1 Couch on Insurance, *supra,* § 14:19, p. 597), and such acts are equally incapable of inducing the kind of reliance necessary to equitable estoppel.

We have also rejected as entirely devoid of merit and as contrary to the record the contention made at oral argument by counsel for Hartford that Weiss was not its agent but was at all times either an agent or broker acting for Granco.

Board with directions to take such further proceedings as may be necessary, including proceedings in respect to any application brought by the injured party, in conformity with the views set forth in this opinion.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.