[Civ. No. 1045. Fifth Dist. July 23, 1969.]

NATIONAL EMBLEM INSURANCE COMPANY, Plaintiff and Appellant, v. EVELYN FERNANDEZ RIOS et al., Defendants and Respondents.

Creede, Dawson & Gillaspy and Frank J. Creede, Jr., for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Coyle & Best and Hollis G. Best for Defendants and Respondents.

GARGANO, J.—This litigation is primarily between two insurance carriers to determine which company is required to defend and indemnify (in the event of an adverse judgment) Mrs. Evelyn Rios who was involved in an automobile accident while driving an automobile owned by Sanger Motor Sales, a dealer in used cars. The chronology of events is this: On January 7, 1966, Sanger Motor Sales, hereafter referred to as Sanger Motors, applied for automobile insurance in connection with its used car business, with limits of $500,000 and $1,000,000, through an agent of the Glens Falls Insurance Company, hereafter referred to as Glens Falls, and coverage was temporarily bound. However, the binder did not detail the conditions under which the coverage was afforded nor did it specify the exclusions; it merely indicated the subject matter, the coverage period, the rate and the amount of insurance.

A short time later, on January 19, 1966, Mrs. Evelyn Rios was involved in an automobile collision with Delma Doyle Morrison; Mrs. Rios was driving a 1960 Ford owned by Sanger Motors and was returning the automobile to the dealer to arrange for its purchase. At the time of the collision she was insured by the National Emblem Insurance Company, hereafter referred to as National Emblem.

After the accident, and admittedly with knowledge of it, Glens Falls declined to issue the policy applied for by Sanger Motors. Instead it issued a back-dated policy to cover the 30-day period from January 1, 1966, to February 1, 1966, with limits of $100,000 to $300,000. The one-month policy also contained an indorsement excluding permissive users of automobiles owned by the insured, Sanger Motors, if the permissive users were covered by other collectible insurance within the limits of the financial responsibility law at the time of the accident.

Subsequently, Mr. Morrison brought an action against Mrs. Rios and Sanger Motors to recover damages allegedly sustained in the automobile collision. Mrs. Rios, then, made demand upon National Emblem to defend her in the action and to indemnify her against any adverse judgment. National Emblem made a similar demand upon Glens Falls, and when Glens Falls denied coverage National Emblem brought this action in the court below to rescind its insurance contract with Mrs. Rios and for declaratory relief. National Emblem sought to rescind its automobile insurance contract with Evelyn Rios on the ground that she made material misrepresentations in her application. It also sought to escape liability under the policy by alleging that Glens Falls was the primary insurer and was required to protect Mrs. Rios under the coverage it had extended to Sanger Motors under the binder of January 7, 1966.

After court trial the trial judge found, in essence, that the one-month policy that Glens Falls issued after the accident was not controlling, that Sanger Motors was covered under the binder of January 7, 1966, and on the date of the accident had automobile insurance within the limits of $500,000 to $1,000,000 as applied for in its application, that the binder, however, did not provide any coverage for permissive users of the insured's automobiles if such users were covered by other valid and collectible insurance, that National Emblem was not entitled to rescind the automobile insurance policy it issued to Mrs. Evelyn Rios prior to the accident, and that Mrs. Rios was covered by valid and collectible insurance at the time of the accident and hence was not protected by the Glens Falls binder. Judgment was entered accordingly, and National Emblem has appealed. However, it appeals only from that portion of the judgment which declares that Glens Falls' binder does not protect Mrs. Evelyn Rios.

At the outset, we reject appellant's sweeping suggestion that any attempt by an insurance company to exclude permissive users of the insured's automobiles from automobile insurance coverage is repugnant to the public policy of this state. On the contrary, by legislative fiat, such exclusions in automobile insurance policies affording coverage to any named insured "engaged in selling, repairing, servicing, delivering, testing, road testing, parking and storing automobiles" are in conformity with public policy if the permissive users of the insured's automobiles are covered by other valid and collectible insurance at the time of the accident. In this connection, Insurance Code section 11580.1, subdivision (f), enacted by the Legislature in 1965, provides: "Where two or more policies are applicable to the same loss and one of such policies affords coverage to a named insured engaged in selling, repairing, servicing, delivering, testing, road testing, parking, or storing automobiles, such policies may contain a provision that the insurance coverage applicable to such motor vehicles afforded a person other than the named insured or his agent or employee shall not be applicable if there is any other valid and collectible insurance applicable to the same loss covering such person as a named insured or as an agent or employee of a named insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code; and in such event, the two or more policies shall not be construed as providing cumulative or concurrent coverage and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall apply. In the event there is no such other valid and collectible insurance, the coverage afforded a person other than the named insured, his agent or employee, may be limited to the financial responsibility requirements specified in Section 16059 of the Vehicle Code."

The cases relied upon by appellant for the opposite proposition are not in point. In *Wildman* v. *Government Emp. Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359], the Supreme Court merely interpreted the public policy of this state, as expressed by the Legislature in Vehicle Code sections 415 and 402 (now Veh. Code, §§ 16451 & 17150), and held that these sections required all automobile liability policies to provide coverage for permissive users of the insured's automobiles in order to protect innocent third persons. The court, however, did not state, or suggest, that the Legislature, in the exercise of its legislative

prerogative, cannot change this public policy or make appropriate exceptions.[1]

In *Abbott* v. *Interinsurance Exchange*, 260 Cal.App.2d 528 [67 Cal.Rptr. 220], this court was called upon to construe the effect of subparagraph (e) of section 11580.1 of the Insurance Code on public policy as articulated by the Supreme Court in the *Wildman* decision. We held that subparagraph (e) as phrased by the Legislature had not eliminated California's strong policy of protecting third persons, but rather only changed the relation between the insured and the insurer. This subparagraph, however, does not pertain to policies affording coverage to persons engaged in selling, repairing, servicing, delivering, testing, road testing, parking and storing automobiles, and our decision in that case does not affect the clear and unequivocal language of subparagraph (f). Moreover, we note that subparagraph (e) has since been amended by the Legislature, but we are not called upon to construe the effect of the latest amendment.

The remaining question, therefore, is whether Glens Falls successfully restricted its liability as to permissive users of Sanger Motor's automobiles under the binder which it issued to the insured on January 7, 1966. It is the rule that an insurance company cannot bootstrap itself into a position of limited coverage by issuing a policy containing such limited coverage after a lawsuit has occurred (*Angle* v. *United States Fid. & Guar. Co.*, 201 Cal.App.2d 758 [20 Cal. Rptr. 391]). Thus, the one-month policy which the company issued after the accident occurred (and which contains the limiting endorsement) is not controlling. As the court said in *American Surety Co. of New York* v. *Williford,* 243 F.2d 494, 498: "Appellant can not, by the mere act of issuing a policy subsequent to the accrual of a claim under a pre-existing oral contract and dating its coverage to a period subsequent to the time of the accrual of the claim, escape liability upon such claim if a valid oral contract of insurance protecting against such claim has been established."

---

[1]We note that in making the exception specified in Insurance Code section 11580.1, subdivision (f), the Legislature did not leave the innocent third party completely unprotected. On the contrary, the exclusion of coverage for permissive users under subparagraph (f) of Insurance Code section 11580.1 is limited to insurance policies in which the named insured is a member of a particular class, and then only if the permissive user is covered under a separate policy with limits at least equal to the financial responsibility requirements specified by section 16059 of the Vehicle Code.

■ It has long been recognized that practicality dictates that a temporary insurance binder issued upon an application for insurance cannot contain all of the details and terms of the proposed insurance contract. The imposition of such a requirement would frustrate the beneficial purpose of providing temporary coverage pending consideration of the application and would necessitate the immediate issuance of an entire written policy (*Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 191, 197 [65 Cal.Rptr. 287, 436 P.2d 287]; *Zander* v. *Texaco, Inc.*, 259 Cal.App.2d 793, 800 [66 Cal.Rptr. 561]). ■ Thus, insurance binders are adequate if they indicate the subject matter, the coverage period, the rate and the amount of insurance (*Parlier Fruit Co.* v. *Firemen's etc. Ins. Co.*, 151 Cal.App.2d 6, 20 [311 P.2d 62]). ■ Moreover, such binders are governed by the terms, conditions and exclusions customarily contained in the standard policy used by the issuer of the binder and in standard insurance policies used by insurance companies in general for the same or essentially similar coverage. As the court stated in the *Parlier Fruit Co.* decision: " '. . . the contract is construed as being subject to the terms and conditions of the policy to be issued or of the policy ordinarily used by the company, or, if there is a standard policy in the jurisdiction, according to the terms and conditions of that policy, and it is presumed that the parties contemplated such a policy, containing such conditions and limitations.'

" . . . . . . . . . .

" ' 'Where, however, the preliminary oral contract or binding slip does not specify the terms and conditions, it is a general rule that the parties will be presumed to have contemplated a form of policy containing such conditions and limitations as are usual in such cases,' (44 C.J.S. 965) not the highest form of coverage which could be obtained but one reasonably suited to plaintiff's situation." (151 Cal.App.2d at pp. 20-21.)

■ And, as is said in 12 A.L.R.3d 1304, at p. 1321: "The principle that in the absence of express agreement the enforcement of insurance binders is generally governed by the terms and conditions of the policies ordinarily used to cover such risks has been applied to automobile insurance binders generally."

■ Applying these principles to the instant case, we conclude that the court's decision is supported by substantial evidence. Mr. Ray Thorpe, Glens Falls' branch manager, testified that "by standard practice we do not issue a policy to a

used car dealer without that limiting endorsement." In addition, he testified (without objection) that to the best of his knowledge the same practice was followed by the major insurance companies.[2] And, significantly, the limited coverage, as to permissive users of Sanger Motors' automobiles was "reasonably suited" to the insured's situation. It substantially reduced the insurance premium without increasing the risk.

The judgment is affirmed.

Stone, Acting P. J., concurred.

---

[2]Under questioning by the trial judge, the witness Thorpe testified as follows:

"Q Did you say that the exclusion that has been referred to is placed in policies issued to used car dealers generally throughout the insurance industry?

A I can't say except from the reference to fire casualty and surety bulletins which make reference to this as a usual thing.

Q Then you did testify it was the practice of your company and I misunderstood. I thought you said—

A No, it is we do.

Q But you did not testify to your own knowledge it is a standard practice in the insurance field?

A No. It is with the companies that I know but there are some hundreds of companies I couldn't say, but I would say *with the major carriers this is standard practice.*" (Italics added.)